# MORRIS, SUPERINTENDENT, SOUTHERN OHIO CORRECTIONAL FACILITY *v.* MATHEWS

No. 84–1636.   Argued November 4, 1985—Decided February 26, 1986

WHITE, J., delivered the opinion of the Court, in which BURGER, C. J., and REHNQUIST, STEVENS, and O'CONNOR, JJ., joined. BLACKMUN, J., filed an opinion concurring in the judgment, in which POWELL, J., joined, *post*, p. 248. BRENNAN, J., *post*, p. 257, and MARSHALL, J., *post*, p. 258, filed dissenting opinions.

*Richard David Drake*, Assistant Attorney General of Ohio, argued the cause for petitioner. With him on the brief was *Anthony J. Celebrezze, Jr.*, Attorney General.

*Michael George Dane* argued the cause for respondent. With him on the brief was *Edward F. Marek*.

JUSTICE WHITE delivered the opinion of the Court.

The question presented in this case is whether a state appellate court provided an adequate remedy for a violation of the Double Jeopardy Clause of the Fifth Amendment by modifying a jeopardy-barred conviction to that of a lesser included offense that is not jeopardy barred.

I

On February 17, 1978, respondent James Michael Mathews and Steven Daugherty robbed the Alexandria Bank in Alexandria, Ohio. After an automobile chase, the police finally surrounded the two men when they stopped at a farmhouse. Soon thereafter, the police heard shots fired inside the house,

and respondent then emerged from the home and surrendered to police. When the officers entered the house, they found Daugherty dead, shot once in the head and once in the chest. The police also found the money stolen from the bank hidden in the pantry.

Once in custody, respondent gave a series of statements to law enforcement officials. In his first statement, given one hour after his surrender, respondent claimed that Daugherty and another man had forced him to aid in the bank robbery by threatening to kill both respondent and his girlfriend. Respondent denied shooting Daugherty. In the second statement, given the same day, respondent again denied shooting Daugherty, but admitted that no other man was involved with the robbery, and that he and Daugherty alone had planned and performed the crime.

Two days later, respondent gave a third statement to police in which he again confessed to robbing the bank. Respondent also related that after he and Daugherty arrived at the farmhouse, he had run back out to their van to retrieve the stolen money, and on his way back inside, he "heard a muffled shot from inside the house." App. 4. Upon investigation, respondent discovered that Daugherty had shot himself in the head. Respondent claimed that Daugherty was still conscious, and called to him by name. *Ibid.*

The County Coroner initially ruled Daugherty's death to be a suicide. The Coroner made this determination, however, before receiving the results of an autopsy performed by a forensic pathologist. This report indicated that Daugherty had received two wounds from the same shotgun. The initial shot had been fired while Daugherty was standing, and entered the left side of his face. This shot fractured Daugherty's skull, and the mere force of the blast would have rendered him immediately unconscious. This wound was not fatal. The second shot was fired while Daugherty was lying on his back, and was fired directly into his heart from extremely close range. This shot was instantaneously fatal.

As a result of this evidence, the Coroner issued a supplemental death certificate, listing "multiple gun shot wounds" as the cause of death.   Record 295.

Based on the Coroner's first opinion that Daugherty took his own life, the State did not charge respondent with Daugherty's death.   Instead, he was indicted under Ohio Rev. Code Ann. § 2911.01 (Supp. 1984) on aggravated robbery charges.[1]   Respondent pleaded guilty on May 17 and was sentenced to a term of incarceration of from 7 to 25 years.

Two days after entering his guilty plea, respondent made the first of two statements in which he admitted having shot Daugherty.   Respondent maintained that Daugherty initially had shot himself in the head, and that he was still alive when respondent discovered him after returning to the farmhouse with the stolen money.   Acting on the theory that, if Daugherty were dead, respondent could claim that he was kidnaped and had not voluntarily robbed the bank, respondent "put [the gun] an inch or two from [Daugherty's] chest and pulled the trigger."   App. 6.[2]   Respondent's second

---

[1] Ohio Rev. Code Ann. § 2911.01 (Supp. 1984) states:

"(A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after such attempt or offense, shall do either of the following:

"(1) Have a deadly weapon or dangerous ordnance, as defined in section 2923.11 of the Revised Code, on or about his person or under his control;

"(2) Inflict, or attempt to inflict serious physical harm on another.

"(B) Whoever violates this section is guilty of aggravated robbery, an aggravated felony of the first degree."

Respondent was also indicted for theft of the van used in the robbery and for burglary.

[2] Respondent's handwritten statement, in pertinent part, reads as follows:

"At that time I ask steve were the money was and he said it was still out in the van.   I tould him to cover me I was going out in the van to get the money.   He said to me right before I went out to be careful and then I went out to the van, and when I was out there getting ready to come back in I heard a muffled shot and I ran in and yelled for steve.   I then heard

statement, given one week later, reiterated these same points. *Id.*, at 8–16.

On June 1, 1978, the State charged respondent with the aggravated murder of Steven Daugherty. Ohio Rev. Code § 2903.01 (1982) defines aggravated murder, in part, as "purposely caus[ing] the death of another . . . while fleeing immediately after committing . . . aggravated robbery."[3] The aggravated robbery referred to in the indictment was the armed robbery of the Alexandria Bank to which respondent had previously pleaded guilty. The state trial court denied respondent's pretrial motion to dismiss the aggravated murder indictment as violative of the Double Jeopardy Clause of the Fifth Amendment.

At the conclusion of the evidence, the trial judge instructed the jury as to the elements of the offense of aggravated mur-

---

something like a moning up stairs. I then ran up stairs and seen steve laying there on the floor. He had shot himself somewere in the head and was bleeding pretty bad. He then seen me and said mike, mike, in a moning, and I said oh fuck, he still had the gun in his hand and was trying to load it up but failed and droped it And he then said to me mike mike in a moning voice please shot me. . . . I knew he was in a lot of pain and I couldn't really shot him even though he was in pretty bad shape. But I really didn't want to, but then I said to myself real quick that if he was dead I could say that I was kidnapped. And they couldn't prove that I robbed the bank. So I took 1 shell that was laying in steve hand and put it in the gun and I then I put it about an inch or two from his chest and pulled the trigger. I really don't know much after that but the gun was dropped on the floor not to far from steve body. I then run down stairs and looked for a place to hid the money." App. 5–6.

[3] Ohio Rev. Code Ann. § 2903.01 (1982) provides, in pertinent part, as follows:

"(B) No person shall purposely cause the death of another while committing or attempting to commit, or while fleeing immediately after committing or attempting to commit kidnapping, rape, aggravated arson or arson, aggravated robbery or robbery, aggravated burglary or burglary, or escape.

"(C) Whoever violates this section is guilty of aggravated murder, and shall be punished as provided in section 2929.02 of the Revised Code."

der. The judge also instructed the jury on the lesser included offense of murder as follows:

"If you find that the State proved beyond a reasonable doubt all of the essential elements of aggravated murder, your verdict must be guilty of that crime and in that event you will not consider any lesser offense.

"But if you find that the State failed to prove the killing was done while the defendant was committing or fleeing immediately after committing aggravated robbery, but that the killing was nonetheless purposely done, you will proceed with your deliberations and decide whether the State has proved beyond a reasonable doubt the elements of the lesser crime or murder.

"The crime of murder is distinguished from aggravated murder by the State's failure to prove that the killing was done while the defendant was committing or fleeing immediately after committing the crime of aggravated robbery." App. 21.

The jury found respondent guilty of aggravated murder, and the court sentenced him to a term of life imprisonment.

Respondent appealed his conviction, claiming that his trial for aggravated murder following his conviction for aggravated robbery violated the Double Jeopardy Clause. The Ohio Court of Appeals, Fifth Judicial District, affirmed his conviction, *State* v. *Mathews*, CA No. 2578 (Licking County, Aug. 9, 1979), and the Ohio Supreme Court declined to grant discretionary review. *State* v. *Mathews*, No. 79–1342 (Dec. 7, 1979). This Court granted respondent's petition for writ of certiorari, vacated the Court of Appeals' judgment, and remanded the case for further consideration in light of *Illinois* v. *Vitale*, 447 U. S. 410 (1980). *Mathews* v. *Ohio*, 448 U. S. 904 (1980).

On remand, the Court of Appeals found that the Double Jeopardy Clause, as construed by this Court in *Vitale*, barred respondent's conviction for aggravated murder. *State* v. *Mathews*, No. 2578 (Licking County, Nov. 7, 1980). The

court noted, however, that § 2903.01 defines aggravated murder as purposely causing the death of another while committing certain felonies, and that § 2903.02 defines murder simply as purposely causing the death of another. App. to Pet. for Cert. A–26.[4] In respondent's trial, therefore, "if all the facts relating to the aggravated robbery of which he was convicted are excluded from consideration of the court and jury, the defendant was still charged with and convicted of murder in that he did purposely cause the death of Steven Daugherty on the date charged." *Ibid.* Accordingly, the Court of Appeals modified the conviction of aggravated murder to murder and reduced respondent's sentence to an indefinite term of from 15 years to life. *Id.*, at A–27.[5] Once again, the Ohio Supreme Court denied respondent's motion to appeal, and this Court denied his subsequent petition for certiorari review. *Mathews* v. *Ohio*, 451 U. S. 975 (1981).

Respondent then sought a writ of habeas corpus in federal court. Applying the reasoning of the Ohio Court of Appeals,

---

[4] Ohio Rev. Code. Ann. § 2903.02 (1982) provides as follows:

"(A) No person shall purposely cause the death of another.

"(B) Whoever violates this section is guilty of murder, and shall be punished as provided in section 2929.02 of the Revised Code."

[5] The Ohio Court of Appeals relied, in part, on Ohio Rule of Criminal Procedure 31, which states:

"(C) *Conviction of lesser offense.* The defendant may be found not guilty of the offense charged but guilty of an attempt to commit it if such an attempt is an offense at law. When the indictment, information, or complaint charges an offense, including degrees, or if lesser offenses are included within the offense charged, the defendant may be found not guilty of the offense charged but guilty of an inferior degree thereof, or of a lesser included offense."

The court also cited Ohio Rule of Criminal Procedure 33(A)(4):

"(4) That the verdict is not sustained by sufficient evidence or is contrary to law. If the evidence shows the defendant is not guilty of the degree of crime for which he was convicted, but guilty of a lesser degree thereof, or of a lesser crime included therein, the court may modify the verdict or finding accordingly, without granting or ordering a new trial, and shall pass sentence on such verdict or finding as modified."

the District Court denied respondent's petition. *Mathews* v. *Marshall*, No. C–1–81–834 (WD Ohio, Apr. 19, 1983).

A divided panel of the Court of Appeals for the Sixth Circuit reversed. *Mathews* v. *Marshall*, 754 F. 2d 158 (1985). Although refusing to hold that in a case like this a new trial on the nonbarred charge is always necessary, the court held that "a conviction obtained in violation of the double jeopardy clause cannot be modified if the defendant can show that there was a 'reasonable possibility that he was prejudiced' by the double jeopardy violation," and that " 'an exceedingly small showing . . . would suffice.' " *Id.*, at 162, quoting *Graham* v. *Smith*, 602 F. 2d 1078, 1083 (CA2 1979). Apparently agreeing with respondent's assertion that "evidence was admitted in his trial for aggravated murder that would not have been admissible in a trial for murder," and stating that the jury "may have [been] prejudiced" by that evidence, the court concluded that respondent had established a sufficient possibility of prejudice to warrant a new trial on the murder charge. *Mathews* v. *Marshall, supra,* at 162.[6]

We granted certiorari, 471 U. S. 1134 (1985), and now reverse.

## II

As an initial matter, we note several issues that are not in dispute. First, the State concedes that under our cases the prosecution of respondent for aggravated murder violated the Double Jeopardy Clause. Similarly, respondent concedes that the Clause would not prevent the State from trying him for murder. Next, all of the courts that have reviewed this case have agreed that, in finding respondent guilty of aggravated murder, the jury necessarily found that he "purposely cause[d] the death of another," which is the definition of murder under Ohio Rev. Code Ann. § 2903.02 (1982). See n. 4, *supra*. Finally, this is not a "harmless

---

[6] The dissenting judge was of the view that, even in a separate trial on the murder charges, the rules of evidence would allow the State "to prove the surrounding circumstances, including the facts surrounding the just-completed bank robbery." 754 F. 2d at 162 (Brown, J., dissenting).

error" case: allowing respondent to be tried for aggravated murder was error, and it was not in any sense harmless. With these considerations aside, the only issue before us is whether reducing respondent's conviction for aggravated murder to a conviction for murder is an adequate remedy for the double jeopardy violation.

Respondent argues that, because the trial for aggravated murder should never have occurred, the Double Jeopardy Clause bars the State from taking advantage of the jeopardy-barred conviction by converting it into a conviction for the lesser crime of murder. He submits that a new trial must be granted whether or not there is a showing of prejudice.

Respondent relies heavily on *Price* v. *Georgia*, 398 U. S. 323 (1970), but his reliance is misplaced. Price was tried for murder and convicted of the lesser included offense of manslaughter. After that conviction was reversed on appeal, there was another trial for murder and another conviction of the lesser crime of manslaughter. We held that the second conviction could not stand because Price had been impliedly acquitted of murder at the first trial and could not be tried again on that charge. *Id.*, at 329. Nor could we "determine whether or not the murder charge against petitioner induced the jury to find him guilty of the less serious offense of voluntary manslaughter rather than to continue to debate his innocence." *Id.*, at 331.

This holding in *Price* did not impose an automatic retrial rule whenever a defendant is tried for a jeopardy-barred crime and is convicted of a lesser included offense. Rather, the Court relied on the likelihood that the conviction for manslaughter had been influenced by the trial on the murder charge—that the charge of the greater offense for which the jury was unwilling to convict also made the jury less willing to consider the defendant's innocence on the lesser charge. That basis for finding or presuming prejudice is not present here. The jury did not acquit Mathews of the greater offense of aggravated murder, but found him guilty of that charge and, *a fortiori*, of the lesser offense of murder as well.

*Benton* v. *Maryland*, 395 U. S. 784 (1969), also strongly indicates that to prevail here, Mathews must show that trying him on the jeopardy-barred charge tainted his conviction for the lesser included offense. Benton was tried for both larceny and burglary. The jury acquitted him on the larceny count, but found him guilty of burglary. His conviction was later set aside because the jury had been improperly sworn. Benton again was tried for both burglary and larceny, and the second jury found him guilty of both offenses. The Maryland Court of Appeals held there had been no double jeopardy violation, but we disagreed, ruling that the Double Jeopardy Clause required setting aside the larceny conviction and sentence. *Id.*, at 796–797.

Benton urged that his burglary conviction must also fall because certain evidence admitted at his second trial would not have been admitted had he been tried for burglary alone. This evidence, he claimed, prejudiced the jury and influenced their decision to convict him of burglary. We rejected that argument, saying both that "[i]t [was] not obvious on the face of the record that the burglary conviction was affected by the double jeopardy violation," and that we should not make this kind of evidentiary determination "unaided by prior consideration by the state courts." *Id.*, at 798 (footnote omitted). We thus vacated the judgment of the Maryland court, and remanded for further proceedings.

Neither *Benton* nor *Price* suggests that a conviction for an unbarred offense is inherently tainted if tried with a jeopardy-barred charge. Instead, both cases suggest that a new trial is required only when the defendant shows a reliable inference of prejudice. We perceive no basis for departing from this approach here; for except that murder was a lesser offense included in the aggravated murder charge rather than a separate charge, there is no difference between this case and *Benton* for double jeopardy purposes.

Accordingly, we hold that when a jeopardy-barred conviction is reduced to a conviction for a lesser included offense

which is not jeopardy barred, the burden shifts to the defendant to demonstrate a reasonable probability that he would not have been convicted of the nonjeopardy-barred offense absent the presence of the jeopardy-barred offense. In this situation, we believe that a "reasonable probability" is a probability sufficient to undermine confidence in the outcome. Cf. *Strickland* v. *Washington*, 466 U. S. 668, 695 (1984). After all, one of the purposes of the Double Jeopardy Clause is to prevent multiple prosecutions and to protect an individual from suffering the embarrassment, anxiety, and expense of another trial for the same offense, *Green* v. *United States*, 355 U. S. 184, 187–188 (1957). In cases like this, therefore, where it is clear that the jury necessarily found that the defendant's conduct satisfies the elements of the lesser included offense, it would be incongruous always to order yet another trial as a means of curing a violation of the Double Jeopardy Clause.

The Court of Appeals thus was correct in rejecting respondent's *per se* submission, but it was nevertheless too ready to find that he had made the necessary showing of prejudice. First, the court's "reasonable possibility" standard, which could be satisfied by "an exceedingly small showing," was not sufficiently demanding. To prevail in a case like this, the defendant must show that, but for the improper inclusion of the jeopardy-barred charge, the result of the proceeding probably would have been different.

Second, the Court of Appeals appeared to agree with respondent that certain evidence admitted at his trial would not have been admitted in a separate trial for murder, but it did not expressly say so, nor did it refer to any Ohio authorities. *Mathews* v. *Marshall*, 754 F. 2d, at 162. The State submits that under Ohio law, conduct of a defendant tending to show either "his motive or intent," or his "scheme, plan or system," is admissible, "notwithstanding that such proof may show or tend to show the commission of another crime by the defend-

ant." Ohio Rev. Code Ann. § 2945.59 (1982).[7] See generally *State* v. *Moorehead,* 24 Ohio St. 2d 166, 169, 265 N. E. 2d 551, 553 (1970). We normally accept a court of appeals' view of state law, but if this case turns on the admissibility of the challenged evidence in a separate trial for murder, the issue deserves a more thorough consideration by the lower court.

Finally, the court's observation that the admission of questionable evidence "may have prejudiced the jury" falls far short of a considered conclusion that if the evidence at issue was not before the jury in a separate trial for murder, there is a reasonable probability that respondent would not have been convicted.

Because the Court of Appeals' legal and factual basis for ordering the writ of habeas corpus to issue was seriously flawed, its judgment is reversed, and the case is remanded to the Court of Appeals for further proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE BLACKMUN, with whom JUSTICE POWELL joins, concurring in the judgment.

To remedy the jeopardy-barred prosecution and conviction of respondent James Michael Mathews for aggravated mur-

---

[7] Ohio Rev. Code Ann. § 2945.59 (1982) provides as follows:

"In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant."

Similarly, Ohio Rule of Evidence 404(b) states:

"(B) *Other crimes, wrongs or acts.* Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

der, the Ohio appellate court modified the conviction to one for the lesser included offense of murder, which was not jeopardy barred. The United States Court of Appeals for the Sixth Circuit held this remedy constitutionally insufficient because there was a "reasonable possibility" that the presence of the aggravated-murder charge prejudiced respondent's defense against the charge of murder. I think the Court of Appeals applied the right standard but reached the wrong result. Accordingly, I concur in today's judgment but do not join the Court's opinion.

I

Respondent concedes that after he pleaded guilty to armed robbery Ohio could have tried him for murder without violating the Double Jeopardy Clause. Disagreeing with the Court of Appeals, however, he contends that the presence of the jeopardy-barred charge of aggravated murder in his subsequent trial *automatically* rendered unconstitutional any conviction resulting from that trial. The Court correctly points out that this position cannot be reconciled with the terms of the judgment in *Benton* v. *Maryland*, 395 U. S. 784 (1969). See *ante*, at 246. Moreover, respondent's primary argument for his position is unconvincing. He asserts that modifying his conviction from aggravated murder down to simple murder cannot possibly cure the violation, because the trial itself constituted the violation. The Double Jeopardy Clause, however, did not prohibit Ohio from holding a trial, only from seeking a conviction for aggravated murder. (It also barred the State from *obtaining* a conviction for aggravated murder, but the violation of that prohibition was remedied by the Ohio appellate court's modification of the judgment.) The error, then, was not that the trial was held, but that it was improperly broad. The prosecution did something it was not allowed to do: it tried respondent for aggravated murder in addition to simple murder. It is true that the prosecutorial conduct at issue is prohibited not simply for

its potential effect on the trial's outcome, but also for the ordeal through which it put the defendant. As a consequence, it is also true that reducing respondent's sentence does not make him "whole" for the violation: it does not compensate him, for example, for any mental anguish inflicted upon him by the prosecution for the aggravated offense. See *Price* v. *Georgia*, 398 U. S. 323, 331, and n. 10 (1970). But it hardly follows from these considerations that the appropriate remedy must always be to set aside the entire conviction and have yet another trial, particularly since one of the purposes of the Double Jeopardy Clause is to promote finality by avoiding multiple trials for the same offense.

Accordingly, the Court of Appeals held that respondent was entitled to a new trial on the murder charge only if he demonstrated a "'reasonable possibility that he was prejudiced'" by the violation. *Mathews* v. *Marshall*, 754 F. 2d 158, 162 (CA6 1985), quoting *Graham* v. *Smith*, 602 F. 2d 1078, 1083 (CA2), cert. denied, 444 U. S. 995 (1979). The majority here now rejects that standard and holds that a defendant must demonstrate "a reliable inference of prejudice." *Ante*, at 246. This means, the majority explains, that respondent must show that without the error "there is a reasonable *probability*" that he would not have been convicted of murder. *Ibid.* (emphasis added). In yet a third formulation of its standard, the Court announces: "To prevail in a case like this, the defendant must show that, but for the improper inclusion of the jeopardy-barred charge, the result of the proceeding probably would have been different." *Ante*, at 247. To the extent that these standards differ from the "reasonable possibility" test applied by the Court of Appeals, they are, in my view, unprecedented and inappropriate.

## II

The Court starts out on the wrong foot by asserting that "this is not a 'harmless error' case." *Ante*, at 244–245. Fundamentally, this *is* a "harmless error" case. Ohio concedes that it violated the Double Jeopardy Clause. To say

that the remedy imposed by the state courts was constitutionally adequate is simply to say that the State's acknowledged transgression may be deemed harmless with respect to respondent's conviction for the lesser included offense. In *Chapman* v. *California*, 386 U. S. 18 (1967), this Court rejected the argument that no constitutional violation can ever be harmless. Some constitutional rights, of course, are "so basic to a fair trial" that their denial automatically requires reversal, *id.*, at 23, but I agree with the Court that this category does not include double jeopardy violations of the sort involved here when the ultimate conviction is not for a jeopardy-barred offense. Under *Chapman*, therefore, respondent's conviction for simple murder may be sustained if the State shows "beyond a reasonable doubt" that its error did not contribute to the conviction. *Id.*, at 24; see also, *e. g.*, *United States* v. *Hasting*, 461 U. S. 499, 511 (1983). As was noted in *Chapman*, the "harmless . . . beyond a reasonable doubt" standard is essentially the same as a requirement of reversal whenever there is a "reasonable possibility" that the error contributed to the conviction. 386 U. S., at 23–24.

The "reasonable possibility" standard originated in *Fahy* v. *Connecticut*, 375 U. S. 85 (1963), where it was applied to the improper introduction of illegally seized evidence. Less than two years prior to this Court's decision in *Chapman*, the Court of Appeals for the Second Circuit persuasively demonstrated that the *Fahy* standard was equally applicable to situations of the kind involved here, *i. e.*, jeopardy-barred prosecutions that ultimately result in convictions on lesser included charges that are not barred. See *United States ex rel. Hetenyi* v. *Wilkins*, 348 F. 2d 844 (1965), cert. denied *sub nom. Mancusi* v. *Hetenyi*, 383 U. S. 913 (1966). Hetenyi was charged by the State with first-degree murder but convicted only of second-degree murder, a lesser included offense. After his conviction was overturned on appeal, he again was prosecuted for first-degree murder, and ultimately

convicted once more only of second-degree murder.[1]  Writing for the Court of Appeals, then-Judge Marshall noted that the Constitution forbade the reprosecution of Hetenyi for an offense of which he had been impliedly acquitted in the first trial, but that the State constitutionally could have prosecuted Hetenyi again for second-degree murder.  Nonetheless, the Court of Appeals invalidated Hetenyi's reconviction for the lesser offense, because there was a *"reasonable possibility* that he was prejudiced" by the fact that he was charged with first-degree murder.  348 F. 2d, at 864 (emphasis in original).  "For example," Judge Marshall explained, "it is entirely possible that without the inclusion of the first degree murder charge, the jury, reflecting a not unfamiliar desire to compromise might have returned a guilty verdict on the first degree manslaughter charge," a lesser included offense of second-degree murder.  *Id.*, at 866.  The court refused to apply a more lenient test for harmless error, noting:

> "The ends of justice would not be served by requiring a factual determination that the accused was actually prejudiced . . . by being prosecuted for and charged with first degree murder, nor would the ends of justice be served by insisting upon a quantitative measurement of that prejudice.  The energies and resources consumed by such inquiry would be staggering and the attainable level of certainty most unsatisfactory." *Id.*, at 864.

This Court relied on *Hetenyi* in *Price* v. *Georgia*, 398 U. S. 323 (1970), a case with similar facts.  Price was tried for murder and found guilty of manslaughter.  His conviction

---

[1] Hetenyi was actually tried three times, each time for first-degree murder.  In the second trial he was convicted of that offense, but the second conviction, like the first, was reversed on appeal on grounds other than double jeopardy.  The third trial resulted in a conviction for second-degree murder.

was overturned on appeal, he was retried for murder, and he again was found guilty of manslaughter. This Court held that the reprosecution for murder was barred on double jeopardy grounds, and rejected the State's argument that the error was rendered harmless by the fact that the second jury convicted Price only of the unbarred offense. Citing *Hetenyi*, the Court noted that "we cannot determine whether or not the murder charge against petitioner induced the jury to find him guilty of the less serious offense of voluntary manslaughter rather than to continue to debate his innocence." 398 U. S., at 331. The Court did not explicitly employ the "reasonable possibility" standard, but it observed: "The Double Jeopardy Clause . . . is cast in terms of the risk or hazard of trial and conviction, not of the ultimate legal consequence of the verdict. To be charged and to be subjected to a second trial for first-degree murder is an ordeal not to be viewed lightly." *Ibid.* The Court certainly gave no indication that it would consider the error harmless unless Price could show that "but for the improper inclusion of the jeopardy-barred charge, the result of the proceeding probably would have been different." See *ante*, at 247.[2]

---

[2] Since *Price*, three Courts of Appeals have reviewed whether a double jeopardy violation was adequately remedied by modifying the jeopardy-barred conviction to one for a lesser included offense that was not jeopardy-barred; like the Court of Appeals for the Sixth Circuit in this case, each of the other two courts has followed *Hetenyi*. In *Graham* v. *Smith*, 602 F. 2d 1078 (CA2), cert. denied, 444 U. S. 995 (1979), the court addressed a situation similar to the one involved here. Graham's conviction for second-degree murder had been reduced on appeal to manslaughter. The modified conviction was then set aside on federal habeas, and the State successfully retried Graham for second-degree murder. Recognizing the double jeopardy violation, a state appellate court reduced the new conviction to manslaughter. This remedy was judged insufficient by the Court of Appeals because Graham's testimony at the second trial resulted in the introduction of extremely damaging impeachment evidence, and he claimed that he might not have testified had the State charged only manslaughter. The Court of Appeals found this claim doubtful but sufficiently plausible to

The Court today offers virtually no explanation for departing from *Chapman* and *Fahy* in favor of a more lenient approach. It cites no support at all for the "reliable inference" and "probably would have been different" formulations of the new test it announces. In support of the "reasonable probability" formulation, the Court refers to *Strickland* v. *Washington*, 466 U. S. 668 (1984), which used the same words but did not concern the adequacy of a proffered remedy for an acknowledged constitutional violation. The question in *Strickland* was whether there had been a constitutional violation in the first place. *Id.*, at 691–692. We held that a professionally unreasonable mistake by defense counsel constitutes ineffective assistance of counsel under the Sixth Amendment only if in retrospect there is a "reasonable probability" that the mistake altered the verdict—that is, "a probability sufficient to undermine confidence in the outcome." *Id.*, at 694; cf. *United States* v. *Bagley*, 473 U. S. 667 (1985) (prosecutor's failure to disclose evidence favorable to the accused violates due process where there is a "reasonable probability" that disclosure would have affected the outcome).[3] In this case, however, it is common ground that

create a "'*reasonable possibility* that [Graham] was prejudiced.'" 602 F. 2d, at 1083, quoting *Hetenyi*, 348 F. 2d, at 864.

The Court of Appeals for the Fifth Circuit took a similar approach in *Tapp* v. *Lucas*, 658 F. 2d 383 (1981), cert. denied, 456 U. S. 972 (1982), which also involved facts resembling those here. Tapp was prosecuted for murder and convicted of manslaughter. The conviction was set aside, and he was retried for murder, this time with success. To remedy the double jeopardy violation, the State Supreme Court reduced the second conviction to manslaughter. Citing *Graham* v. *Smith*, the Court of Appeals upheld this remedy as "a common sense solution to the problem of avoiding yet another trial." 658 F. 2d, at 386. The court distinguished *Price* on the ground that "the *possibility* of prejudicial jury compromise is simply absent from this case." *Ibid.* (emphasis added).

[3] As in *Strickland*, the Court today defines a "reasonable probability" as "a probability sufficient to undermine confidence in the outcome." *Ante*, at 247; *Strickland*, 466 U. S., at 694. In *Strickland*, however, we specifically refused to require a showing "that counsel's deficient conduct *more*

respondent's rights under the Double Jeopardy Clause were violated when Ohio tried him for aggravated murder. The question is not whether Ohio has also violated the Sixth Amendment or the Due Process Clause. The question is whether the State has sufficiently contained the damage from its *acknowledged* violation of the Double Jeopardy Clause, or whether that transgression taints even the conviction for simple murder. At issue is the extent to which the law will tolerate a conviction that may have been obtained through abridgment of a defendant's constitutional rights. Once it is established that the State has violated the Constitution in the course of a prosecution, the proceedings lose whatever presumption of regularity they formerly enjoyed, and the State properly bears a heavy burden in arguing that the result should nonetheless be treated as valid.

By ruling, despite *Chapman*, that a defendant in a case such as this must show more than a reasonable possibility of prejudice to invalidate the conviction, the Court makes double jeopardy violations more readily excusable than any other kind of constitutional error. For me, that makes little sense. Violations of the Double Jeopardy Clause are no less serious than violations of other constitutional protections. Their excusability should be judged by the same standard. The Court offers no real explanation for the special leniency it announces today, and there is none.

## III

The proper question in this case is thus whether Ohio has shown beyond a reasonable doubt that the aggravated-murder charge did not contribute to respondent's conviction for simple murder. Under *Chapman* and *Fahy* this means

---

*likely than not* altered the outcome in the case." *Id.*, at 693 (emphasis added). The Court's reliance on some of the language of *Strickland* therefore renders particularly puzzling its wholly unprecedented demand one paragraph later that the respondent here demonstrate that without the jeopardy-barred charge "the result of the proceeding probably would have been different." *Ante*, at 247.

that the State must convincingly disprove any reasonable possibility that the greater charge prejudiced respondent's defense against the lesser. With most errors, the prejudice to be feared is so obvious that there is no need for the defendant to spell it out. When illegally obtained evidence is introduced, or when the prosecutor makes forbidden remarks, it is understood that the danger is that the illegal evidence or the remarks will influence the jury. In this case, however, there is no obvious way in which the defendant could have been prejudiced. The conviction for the jeopardy-barred offense was reduced to one for an unbarred, lesser included offense. There is no possibility of a compromise verdict, as in *Hetenyi* or *Price*, because here the jury convicted for the greater offense charged. Nor is there any reason to believe that evidence regarding the robbery, admitted to prove the aggravating factor in respondent's trial, would not have been admitted in a trial for simple murder. Like the Federal Rules of Evidence, Ohio's evidence code allows the introduction of evidence of other crimes to show "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Ohio Rule Evid. 404(B); see also Fed. Rule Evid. 404(b). The murder in this case was committed while in flight from the bank robbery. The State's theory is that respondent murdered his accomplice in order to silence him so that respondent could escape prosecution for the robbery and, he hoped, return later to pick up the stolen money he had hidden. There consequently is no apparent reason why evidence of the robbery would not have been admissible to show motive and opportunity for the murder.

Given all this, respondent is obligated to spell out with some specificity how the trial might have gone better for him had the State charged only simple murder. He has not done so; instead, he has simply speculated that all sorts of things might have been different. That is not enough to prevent this Court from "declar[ing] a belief that [the error] was

harmless beyond a reasonable doubt." *Chapman*, 386 U. S., at 24. If it were, the remand in *Benton* v. *Maryland*, 395 U. S. 784 (1969), would have been inappropriate: the Court there simply would have vacated the burglary conviction, because there was no telling what would have happened had the defendant not been forced to defend himself against the larceny charge. Perhaps different trial tactics would have been tried; perhaps defense counsel would have prepared more fully on the burglary charge. Indeed, if abstract speculations of this sort sufficed to create a "reasonable doubt" that an error was harmless, it is difficult to see how any constitutional error ever would qualify.

I therefore concur in the Court's judgment, although I see no justification for departing from the traditional and established standards for deciding questions of this kind.

JUSTICE BRENNAN, dissenting.

Both the charge for aggravated robbery, to which respondent pleaded guilty, and the subsequent charge for aggravated murder arose from the same criminal transaction or episode. In those circumstances, Ohio's prosecution for aggravated murder, and the Ohio Court of Appeals' subsequent reduction of that conviction to simple murder, in my view, violated the prohibition of the Fifth Amendment, made applicable to the States through the Fourteenth Amendment, *Benton* v. *Maryland*, 395 U. S. 784 (1969), that no person shall be subject for the same offense to be twice put in jeopardy. I adhere to my view that the Double Jeopardy Clause requires that except in extremely limited circumstances not present here, "all the charges against a defendant that grow out of a single criminal act, occurrence, episode, or transaction" be prosecuted in one proceeding. *Ashe* v. *Swenson*, 397 U. S. 436, 453–454 (1970) (BRENNAN, J., concurring). See, *e. g.*, *Brooks* v. *Oklahoma*, 456 U. S. 999 (1982) (BRENNAN, J., dissenting); *Snell* v. *United States*, 450 U. S. 957 (1981) (BRENNAN, J., dissenting); *Werneth* v. *Idaho*, 449 U. S. 1129 (1981) (BRENNAN, J., dissenting); *Thompson* v. *Oklahoma*,

429 U. S. 1053 (1977) (BRENNAN, J., dissenting). Accordingly, I would affirm the judgment below reversing the District Court, with directions to the Court of Appeals to remand the case to the District Court with instructions to issue the writ.

However, even on the view that a second prosecution is permissible under the circumstances of this case, I would agree with JUSTICE BLACKMUN for the reasons stated in his opinion concurring in the judgment, *ante*, p. 248, that respondent is entitled to a new trial if he could demonstrate a "reasonable possibility" that he was prejudiced. *Ante*, at 255–256. I also agree with JUSTICE MARSHALL, *post*, at 259, that the Court of Appeals' finding that this standard has been met should be sustained.

JUSTICE MARSHALL, dissenting.

For substantially the reasons stated in Parts I and II of JUSTICE BLACKMUN's thoughtful concurrence, I believe that the Court of Appeals was correct to conclude that respondent was entitled to a new trial if he could demonstrate a "'reasonable possibility that he was prejudiced'" by the double jeopardy violation, *Mathews* v. *Marshall*, 754 F. 2d 158, 162 (CA6 1985) (quoting *Graham* v. *Smith*, 602 F. 2d 1078, 1083 (CA2 1979)). This standard is consistent with the approach this Court has uniformly taken when constitutional violations do not require automatic reversal, see *ante*, at 250–253, and is justified by the difficulties that a defendant wishing to show even the probability of actual prejudice must face.

> "There [can] never be any certainty as to whether the jury was actually influenced by the unconstitutionally broad scope of the reprosecution or whether the accused's defense strategy was impaired by this scope of the charge, even if there were a most sensitive examination of the entire trial record and a more suspect and controversial inquest of the jurors still alive and available." *United States ex rel. Hetenyi* v. *Wilkins*, 348 F.

2d 844, 864 (CA2 1965), cert. denied *sub nom. Mancusi* v. *Hetenyi*, 383 U. S. 913 (1966).

The mere absence of any danger in a particular case that the bringing of a jeopardy-barred charge resulted in a compromise verdict, see, *e. g., Price* v. *Georgia,* 398 U. S. 323 (1970); *Hetenyi, supra,* is no reason for adopting a different standard for determining whether a defendant is entitled to a new trial. By impermissibly expanding the scope of the prosecution, the double jeopardy violation may have exposed defendant to serious dangers of another sort.

One of the dangers faced by respondent here was that evidence that would not have been admitted (indeed, might not have even been offered) had he been tried for simple murder came in because the prosecution had brought the jeopardy-barred charge of aggravated murder. The Court of Appeals reversed respondent's conviction because it found that such otherwise inadmissible evidence had been admitted and "may have prejudiced the jury with regard to its findings as to intent and to the act itself." 754 F. 2d, at 162. Unlike JUSTICE BLACKMUN, I see no reason why the Court of Appeals should be required to reconsider its conclusion that respondent was so prejudiced. On such a question of state evidentiary law, "the federal judges who deal regularly with questions of state law in their respective districts and circuits are in a better position than we to determine how local courts would dispose of comparable issues," *Butner* v. *United States,* 440 U. S. 48, 58 (1979). And, in the absence of any indication that the Court of Appeals gave anything less than its full attention to the question whether certain evidence that in fact came in would have been inadmissible in a simple murder trial, I believe that the majority's decision to remand the case for a "more thorough consideration by the lower court" of this issue, *ante,* at 248, is disingenuous at best.