I concur in that portion of the opinion relating to compensatory damages, but I would not affirm the judgment awarding punitive damages in the sum of $375,000. Instead, I would condition any affirmance of that judgment on the filing of a remittitur.
On remand, the trial court, in refusing to reduce the award of punitive damages, stated:
 "Upon consideration of the evidence provided at the post-trial hearing, arguments and briefs of counsel and having observed the trial, the actions and reactions of the jurors and the conduct of counsel, the Court is of the opinion and expressly finds that the jury's decision-making process was not tainted by bias, passion, improper motive, or prejudice. The Court further finds that the jury's award does not exceed an amount which will allow for society's goals of punishment and deterrence. Each of the factors set out in Green Oil Co. v. Hornsby, 539 So.2d 218 (Ala. 1989), have been considered by the Court. Based upon the foregoing, the Court finds that the verdict is not excessive and declines to reduce it."
The trial court used boilerplate language in stating that it applied the Green Oil factors. I cannot tell which factors it used and what conclusions it reached in that regard.[4] In any event, the trial court refused to reduce the award. This Court also states, among other things, that it has conducted anindependent review of the award in light of the Green Oil
factors; it also gives as one of its reasons for affirming that the defendants are "doctors, each earning a salary in excess of $200,000 per year and each owning equity in certain assets, which in Fraser's case amounts to approximately $213,600 and in Lewis's case amounts to approximately $48,000." Assuming those facts are true, do they show that it was necessary to sustain the awards in order to accomplish society's goals of punishment and deterrence? I think not, especially here, because another jury did not think such a stiff penalty was appropriate. This case was tried twice, and the record shows that the first jury that tried this case set the total penalty at $30,000, and these plaintiffs made no claim on the original appeal that the award of $30,000 as a penalty was inadequate. How can the trial court and this Court approve this higher award without at least some statement of the reasons?
The result that has been reached in this case — the awarding to the plaintiffs of a total of $375,000 in punitive damages, when the first jury that heard this case awarded only $30,000
— shows why this Court should very carefully scrutinize awards of punitive damages by juries: Juries are given a standardlessdiscretion in imposing such penalties in civil cases.
The role of the court and the jury in the awarding of punitive damages has received increased attention by the Alabama legislature, the trial courts, this Court, and the United States Supreme Court. One of the first cases to address the issue of burgeoning punitive damages was Shiloh Const. Co.v. Mercury Const. Corp., 392 So.2d 809 (Ala. 1980) (Torbert, C.J., and Maddox, J., dissenting), in which a jury had awarded damages totalling $559,966.61, and the trial judge had granted a remittitur. A majority of this Court reversed the judgment and *Page 454 
reinstated the verdict, even though the trial judge had found that the verdict was against the great weight and preponderance of the evidence. The Shiloh Court, even though embarking on what I thought was new territory and ignoring what I believed to be clear legal authority to the contrary, did not establish any standards for either a jury or reviewing courts to use in determining whether a particular award should or should not be set aside or a remittitur required. After Shiloh, this Court continued to review awards without establishing any specific guidelines for review. As author of the opinion in GeneralMotors Corp. v. Edwards, 482 So.2d 1176, 1199 (Ala. 1985), I noted that this Court had not adopted any standards to govern such reviews of jury verdicts, stating the following:
 "As can readily be seen by a review of these cases, this Court has not yet adopted specific standards for courts to apply in granting or denying remittitur. We believe that the time has come for this Court to study the remittitur practice in Alabama, and to adopt a rule or rules of practice which would ensure the protection of the jury system and the parties' right to a jury trial, but which would also protect the public's interest in decreased court costs and a speedy and just determination of every case upon the merits. We do not adopt those standards in this case, because to do so would effect a major change in current remittitur practice, and such a major change should be adopted only after adequate note and deliberate study by the full Court."
482 So.2d at 1199. (Emphasis original). This Court, inHammond v. City of Gadsden, 493 So.2d 1374 (Ala. 1986), andGreen Oil Co. v. Hornsby, 539 So.2d 218 (Ala. 1986), adopted some factors for reviewing courts to use in deciding whether to interfere with a jury award of punitive damages, after litigants had levelled attacks on the Alabama practice as violating the United States Constitution.
As I stated in my special concurring opinion in Green OilCo., 539 So.2d 218, 224, the factors set out in that case are legitimate factors that a trial judge may consider in reviewing a claim that a jury has awarded an excessive amount in punitive damages. I stated then, however, and I restate now, that "[Green Oil] does not address the question of what a jury can consider when determining the proper amount to award."
The latest expression on the constitutional question relating to the excessiveness of punitive damages awards is contained in the landmark decision of the Supreme Court of the United States in Pacific Mutual Life Ins. Co. v. Haslip, ___ U.S. ___,111 S.Ct. 1032, 113 L.Ed.2d 1 (1991), a case appealed from this Court. In Haslip, this Court had affirmed an award of punitive damages against an insurance company whose agent had taken a policyholder's premiums and had not remitted them to the company; the company refused to accept responsibility for the conduct of its agent and refused to pay policy benefits to Ms. Haslip. The Supreme Court of the United States affirmed the judgment of this Court, but I believe it affirmed only because that Court thought that Alabama's review procedures were sufficient to sustain the award made in that case. If PacificMutual says anything, it says that each case must be approached on a case-by-case basis, and it is clear to me that if the trial courts and the appellate courts do not, in fact, conduct an adequate and meaningful review of awards of punitive damages that are alleged to be disproportionate to the actual damages, then a defendant's due process rights can be seriously jeopardized. Even though the trial court and this Court have conducted a review, I will explain why I believe that the review was neither adequate nor meaningful in this particularcase — a case in which the reviews gave no consideration to the fact that another jury, hearing the same evidence, and being given the same instructions on the law relating to the award of punitive damages, made an award that was $345,000 less than the amount awarded by the jury in this case.
The majority sustains the award on the following ground:
 "The evidence was sufficient to warrant submitting the question of punitive *Page 455 
damages to the jury, and the record reveals that the defendants' culpability was probably found by the jury to stem from their recklessness in involving themselves in the business ventures. . . . The potential for harm here was great, in that each of the plaintiffs could have conceivably had a greater economic loss as a result of their investments. . . ." (Emphasis added.)
The Court classifies the conduct here as "recklessness in involving themselves in the business ventures." Is "reckless" conduct so culpable as to require the imposition of a penalty in the total sum of $375,000? I think not. "Recklessly" is defined in our criminal statutes at § 13A-2-2(3), Ala. Code 1975, as follows:
 "Recklessly. A person acts recklessly with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation."
I accept the fact that the Supreme Court of the United States has essentially said, in Haslip, that juries can, based on the type of instruction given in this case, make awards of punitive damages, but, as I read the Haslip case, the Supreme Court allows such jury awards only if there is an adequate and meaningful review by the trial and appellate courts.
I cannot accept the proposition that the culpable conduct in this case merits punishment in the sum of $375,000 and I cannot find such an award to be consistent with the first jury's finding of culpability, that jury awarding only $30,000. Clearly, the facts surrounding the culpable conduct in this case can in no way compare with the culpable conduct inHaslip. The culpable conduct there was certainly more than "recklessness in involving [oneself] in the business ventures," the culpable conduct found to justify the award in this case. Comparing the facts of this case against the facts of Haslip, or to some of the facts of other cases that have been reviewed by this Court, I cannot find any semblance of similarity insofar as the culpability of conduct is concerned.
What particularly bothers me, as I have already indicated, is the fact that a previous jury, hearing the same evidence, being instructed the same on the law of the case with regard to punitive damages, found that the amount needed to accomplish society's goals of punishment and deterrence was the total sum of $30,000. The jury in this case sets the punishment at $375,000.
If this were a criminal case rather than a civil case, there would be a serious question whether these defendants could be punished more than they were punished initially. In NorthCarolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656
(1969), the Supreme Court of the United States held that a defendant who had been successful in a post-conviction proceeding in getting his conviction set aside, could not be given a higher sentence on retrial if the higher sentence was based on vindictiveness.[5]
I mention the North Carolina v. Pearce principle because there is authority for the proposition that the imposition of a civil penalty for the same conduct that has been punished criminally can present double jeopardy problems. Punitive damages serve punitive goals, Day v. Woodworth, 54 U.S. (13 How.) 363, 14 L.Ed. 181 (1851), and "the labels 'criminal' and 'civil' are not of paramount importance." United States v.Halper, 490 U.S. 435, 447, 109 S.Ct. 1892, 1901,104 L.Ed.2d 487 (1989) (imposition of a statutory civil fine on a defendant who had previously been convicted and *Page 456 
fined in a criminal case for the same conduct violated the Double Jeopardy Clause).
In Halper, the Court, in determining whether the civil fine imposed in that case constituted punishment, said the following:
 "In making this assessment, the labels 'criminal' and 'civil' are not of paramount importance. It is commonly understood that civil proceedings may advance punitive as well as remedial goals, and conversely, that both punitive and remedial goals may be served by criminal penalties. The notion of punishment, as we commonly understand it, cuts across the division between the civil and the criminal law, and for the purposes of assessing whether a given sanction constitutes multiple punishment barred by the Double Jeopardy Clause, we must follow the notion where it leads. Cf. Hicks v. Feiock, 485 U.S. 624, 631, 108 S.Ct. 1423 [1429] 99 L.Ed.2d 721 (1988) ('the labels affixed either to the proceeding or to the relief imposed . . . are not controlling and will not be allowed to defeat the applicable protections of federal constitutional law'). To that end, the determination whether a given civil sanction constitutes punishment in the relevant sense requires particularized assessment of the penalty imposed and the purposes that the penalty may fairly be said to serve. Simply put, a civil as well as a criminal sanction constitutes punishment when the sanction as applied to the individual case serves the goals of punishment.
 "These goals are familiar. We have recognized in other contexts that punishment serves the twin aims of retribution and deterrence. See, e.g., Kennedy v. Mendoza-Martinez, 372 U.S. 144, 168, 83 S.Ct. 554, 567, 9 L.Ed.2d 644 (1963) (these are the 'traditional aims of punishment'). Furthermore, '[r]etribution and deterrence are not legitimate nonpunitive governmental objectives.' Bell v. Wolfish, 441 U.S. 520, 539, n. 20, 99 S.Ct. 1861, 1874, n. 20 [60 L.Ed.2d 447] (1979). From these premises, it follows that a civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment, as we have come to understand the term. Cf. Mendoza-Martinez, 372 U.S., at 169, 83 S.Ct. at 568 (whether sanction appears excessive in relation to its nonpunitive purpose is relevant to determination whether sanction is civil or criminal). We therefore hold that under the Double Jeopardy Clause a defendant who already has been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not fairly be characterized as remedial, but only as a deterrent or retribution.
 "We acknowledge that this inquiry will not be an exact pursuit. In our decided cases we have noted that the precise amount of the Government's damages and costs may prove to be difficult, if not impossible, to ascertain. See, e.g., [Rex Trailer Co. v. United States, 350 U.S. 148], at 153, 76 S.Ct. [219] 222 [100 L.Ed. 149 (1956)]. Similarly, it would be difficult if not impossible in many cases for a court to determine the precise dollar figure at which a civil sanction has accomplished its remedial purpose of making the Government whole, but beyond which the sanction takes on the quality of punishment. In other words, as we have observed above, the process of affixing a sanction that compensates the Government for all its costs inevitably involves an element of rough justice. Our upholding reasonable liquidated damages clauses reflects this unavoidable imprecision. Similarly, we have recognized that in the ordinary case fixed-penalty-plus-double-damages provisions can be said to do no more than make the Government whole.
 "We cast no shadow on these time-honored judgments. What we announce now is a rule for the rare case, the case such as the one before us, where a fixed-penalty provision subjects a prolific but small-gauge offender to a sanction overwhelmingly disproportionate to the damages he has caused. The rule is one of reason: Where a defendant previously has sustained a criminal penalty and the *Page 457 
civil penalty sought in the subsequent proceeding bears no rational relation to the goal of compensating the Government for its loss, but rather appears to qualify as 'punishment' in the plain meaning of the word, then the defendant is entitled to an accounting of the Government's damages and costs to determine if the penalty sought in fact constitutes a second punishment. We must leave to the trial court the discretion to determine on the basis of such an accounting, the size of the civil sanction the Government may receive without crossing the line between remedy and punishment. Cf. Morris v. Mathews, 475 U.S. 237, 106 S.Ct. 1032, 89 L.Ed.2d 187 (1986) (reducing criminal conviction to lesser included offense in order to avoid double jeopardy bar); see also Peterson v. Richardson, 370 F. Supp. 1259, 1267 (N.D.Tex 1973), aff'd sub nom. Peterson v. Weinberger, 508 F.2d 45 (C.A. 5), cert. denied sub nom. Peterson v. Mathews, 423 U.S. 830, 96 S.Ct. 50, 46 L.Ed.2d 47 (1975) (imposing less than full civil sanction authorized by False Claims Act when the full sanction would be unreasonable and not remotely related to actual loss). While the trial court's judgment in these matters often may amount to no more than an approximation, even an approximation will go far towards ensuring both that the Government is fully compensated for the costs of corruption and that, as required by the Double Jeopardy Clause, that defendant is protected from a sanction so disproportionate to the damages caused that it constitutes a second punishment.
 "We do not consider our ruling far reaching or disruptive of the Government's need to combat fraud. Nothing in today's ruling precludes the Government from seeking the full civil penalty against a defendant who previously has not been punished for the same conduct, even if the civil sanction imposed is punitive. In such a case, the Double Jeopardy Clause simply is not implicated. Nor does the decision prevent the Government from seeking and obtaining both the full civil penalty and the full range of statutorily authorized criminal penalties in the same proceeding. In a single proceeding the multiple punishment issue would be limited to ensuring that the total punishment did not exceed that authorized by the legislature. See, e.g., Missouri v. Hunter, 459 U.S. 359, 368369, 103 S.Ct. 673, 679-680, 74 L.Ed.2d 535 (1983) ('Where . . . a legislature specifically authorizes cumulative punishment under two statutes . . . the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial'). Finally, nothing in today's opinion precludes a private party from filing a civil suit seeking damages for conduct that previously was the subject of criminal prosecution and punishment. The protections of the Double Jeopardy Clause are not triggered by litigation between private parties. In other words, the only proscription established by our ruling is that the Government may not criminally prosecute a defendant, impose a criminal penalty upon him, and then bring a separate civil action based on the same conduct and receive a judgment that is not rationally related to the goal of making the Government whole."
490 U.S. at 447-451, 109 S.Ct. at 1901-1903.
As I read Halper, the Court holds that the imposition of a civil penalty can have constitutional implications, and clearly the Haslip case recognizes this same principle. As I view the matter, the question becomes: Should a court reviewing an award of punitive damages in a civil case give any consideration to the fact that a prior jury had awarded a sum substantially less
than the sum awarded by a second jury and that in the first appeal the plaintiffs made no challenge to the adequacy of the initial award? I think that the answer to that question, of course, is in the affirmative.
Although I do not suggest that an award of punitive damages is res judieata as to amount of damages, I would suggest that if the facts of a case show that the jury in an earlier trial of the case has assessed punitive damages in an amount substantially different from the amount assessed by a *Page 458 
subsequent jury, as is true in this case, then the fact of that disparity in amounts should, at least, be considered by the reviewing trial court, and by this Court, in determining whether the second award is excessive.[6]
The issue presented by this case, of course, as the Supreme Court of the United States said in Haslip, will not go away.[7] I believe that this Court, although conducting a review of the award, has failed to take into consideration some of the principles that I think are applicable in this case. Consequently, I would order a remittitur as a condition of affirmance, and I must dissent as to that particular aspect of the majority opinion.
[4] In other cases, trial judges have detailed their reasons for refusing to reduce an award.
[5] In a subsequent case, arising out of an appeal from this Court, the Supreme Court of the United States did approve the imposition of a higher sentence upon a retrial of the case,Alabama v. Smith, 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865
(1989), but only because sentence concessions had been made regarding the defendant's earlier plea of guilty upon which the first sentence was imposed.
[6] I recognize that this Court has affirmed a punitive damages award when, on retrial, a subsequent jury has awarded more in punitive damages than did a prior jury. See, Winn-DixieMontgomery, Inc. v. Henderson, 395 So.2d 475 (Ala. 1981) ($14,000 awarded by first jury (353 So.2d 1380) and $45,000 awarded on retrial). I dissented in that case because I did not think the conduct there shown was so culpable as to justify any award of punitive damages, believing as I do in this case, that punitive damages should bear some relationship to the culpability of the defendant's conduct.
[7] In Haslip, Justice Blackmun, authoring the majority opinion, said:
 "[W]e cannot say that the common-law method for assessing punitive damages is so inherently unfair as to deny due process and to be per se unconstitutional. . . ."
 "This, however, is not the end of the matter. It would be just as inappropriate to say that, because punitive damages have been recognized for so long, their imposition is never unconstitutional [citation omitted]. . . . We note once again our concern about punitive damages that 'run wild.' Having said that, we conclude that our task today is to determine whether the Due Process Clause renders the punitive damages award in this case constitutionally unacceptable."
___ U.S. at ___, 111 S.Ct. at 1043.