## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-30178

United States Court of Appeals
Fifth Circuit

**FILED**
August 2, 2018

Lyle W. Cayce
Clerk

ANTHONY THOMAS,

　　　　Petitioner - Appellee

v.

DARREL VANNOY, WARDEN, LOUISIANA STATE PENITENTIARY,

　　　　Respondent - Appellant

Appeal from the United States District Court
for the Middle District of Louisiana

Before HIGGINBOTHAM, SMITH, and CLEMENT, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

This case asks us to traverse the knotty terrain at the intersection of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), double jeopardy, and ineffective assistance of counsel. We are called upon to review the lower court's decision to grant habeas relief; we will reverse that decision and deny the petitioner's request for relief.

**I.**

Charged with aggravated burglary in Louisiana state court in 1998, Anthony Thomas was only convicted of *attempted* aggravated burglary, an implied acquittal of aggravated burglary. With the conviction for attempted aggravated burglary, the state initiated habitual offender proceedings, seeking

No. 17-30178

Thomas's life imprisonment without the possibility of parole.[1] But the reviewing court found that the prosecutor had committed an error in his closing statement, and remanded for a new trial. Instead of charging him with attempted aggravated burglary—or some other non-barred offense—the state charged Thomas with aggravated burglary once again, an undisputed double jeopardy violation.

In the second proceeding, Thomas waived a jury, and in a bench trial before a Louisiana state court judge, he was convicted of a different lesser included offense: unauthorized entry of an inhabited dwelling. Louisiana once again initiated habitual offender proceedings, but the state intermediate court again vacated the conviction. Upon Louisiana's appeal to the Louisiana Supreme Court, however, the conviction for unauthorized entry was reinstated. The Louisiana Supreme Court reasoned that while a double jeopardy violation had doubtless occurred, the final conviction was for a nonjeopardy-barred offense, and that conviction was not necessarily tainted by the wrongful prosecution.

Turning to state collateral review, Thomas argued that his counsel had been ineffective for failing to move to quash the jeopardy-barred indictment for aggravated burglary. The state judge who had presided over Thomas's bench trial conducted hearings and determined that Thomas was entitled to relief. The Louisiana Supreme Court reversed once more. Disagreeing with the trial

---

[1] Importantly, *any* new felony conviction would result in life in prison without the possibility of parole for Thomas. In determining the applicability of a habitual offender statute, Louisiana courts apply the version in effect at the time of the crime's commission. *See State v. Evans*, 998 So.2d 197, 205 (La. Ct. App. 2008). For Thomas, that means the version in effect in 1998, which said, "[i]f the third felony or either of the two prior felonies is a felony defined as a crime of violence . . . , the person shall be imprisoned without benefit of parole, probation, or suspension of sentence." La. R.S. 15:529.1.A.(1)(ii) (1998). Thomas has two previous felony convictions—one for armed robbery, one for attempted manslaughter—and both are crimes of violence under Louisiana law.

court—and over a dissent—it held that Thomas had not been prejudiced by his lawyer's failure to quash the invalid charge.

Thomas then turned to the federal courts. His petition for habeas relief urges two flaws in the state court proceedings. First, he claims that the Louisiana Supreme Court incorrectly resolved the Fifth Amendment double jeopardy argument that he raised on direct appeal. Second, he claims that the Louisiana Supreme Court incorrectly resolved the Sixth Amendment ineffective assistance of counsel argument that he raised on state collateral review. The magistrate judge recommended granting relief on both grounds, and the district court below relied on this recommendation to once again reverse Thomas's conviction; that decision is now before us.

## II.

We review a district court's decision to grant habeas relief for clear error in factual determinations and de novo for legal ones.[2] Because the Louisiana Supreme Court has adjudicated Thomas's claims on the merits, our review is subject to AEDPA's so-called "relitigation bar."[3] And because that relitigation bar applies, we may not grant habeas relief unless "the [state court's] adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."[4] AEDPA's reference to clearly established law encompasses "the holdings, as opposed to the dicta," of Supreme Court decisions.[5] For a Supreme Court decision to clearly establish law, it must "confront 'the specific question presented by [another] case'"—it is not enough for a subsequent case to involve "circumstances . . . [that] are only

---

[2] *See Richards v. Quarterman*, 566 F.3d 553, 561 (5th Cir. 2009).

[3] *See* 28 U.S.C. § 2254(d)(1).

[4] *Id.*

[5] *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

No. 17-30178

'similar to'" earlier Supreme Court decisions.[6] Thus, we cannot simply "fram[e] [Supreme Court] precedents at . . . a high level of generality" and declare a principle to be clearly established when the Court has yet to squarely consider it.[7]

To overcome the relitigation bar, a petitioner must show that a state court acted "contrary to" or engaged in an "unreasonable application of" the Supreme Court's clearly established law.[8] These are distinct errors.[9] A state court decision is "contrary to" clearly established law if it entails "a conclusion opposite to that reached by th[e] Court on a question of law or if the state court decides a case differently than th[e] Court has on a set of materially indistinguishable facts."[10] A state court decision is an "unreasonable application of" clearly established law, on the other hand, "if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."[11] The Court has explained that a state court opinion cannot comprise an unreasonable application of Supreme Court precedent so long as "'fairminded jurists could disagree' on the correctness of the state court's decision."[12] Thus, for a state decision to amount to an unreasonable application of federal law, a petitioner must point to an error so "well understood and comprehended in existing law" it is "beyond any possibility for fairminded disagreement."[13]

---

[6] *Woods v. Donald*, 135 S. Ct. 1372, 1377 (2015) (per curiam).

[7] *Nevada v. Jackson*, 133 S. Ct. 1990, 1994 (2013) (per curiam).

[8] *See* 28 U.S.C. § 2254(d)(1).

[9] *See Williams*, 529 U.S. at 412.

[10] *Id.* at 413.

[11] *Id.*

[12] *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

[13] *Metrish v. Lancaster*, 133 S. Ct. 1781, 1786–87 (2013) (quoting *Richter*, 562 U.S. at 103) (quotations omitted).

4

No. 17-30178

## III.

We begin by deciding whether the Louisiana Supreme Court's resolution of Thomas's Fifth Amendment double jeopardy claim on direct appeal was contrary to, or reflected an unreasonable application of, clearly established law.

## A.

First, according to Thomas, the Louisiana Supreme Court's decision was contrary to *Price v. Georgia*,[14] a case that he declares to be "materially indistinguishable" from this one.[15] If that were true, his argument would naturally be on strong footing. But it is not.

*Price v. Georgia* involved a defendant who was twice charged with murder in state court.[16] The first time, the jury returned a verdict for a lesser included offense, thereby implicitly acquitting him of the murder charge.[17] But as with Thomas, the state proceeded to charge him with murder once more.[18] And as with Thomas, the defendant was again convicted of a lesser included offense.[19] On direct appeal, the *Price* Court held that the second prosecution violated the Double Jeopardy Clause and reversed the conviction.[20] At first blush, the facts seem to align: both Thomas and the defendant in *Price* were charged with a greater offense and convicted of a lesser included offense, and were then charged with the same greater offense and again convicted of a lesser included offense.

But an important difference marks *Price* out from this case. In *Price*, the second trial was before a jury. When it opined on the harm of the double

---

[14] 398 U.S. 323 (1970).
[15] **Blue Br. at 13.**
[16] *Id.* at 324.
[17] *Id.*
[18] *Id.*
[19] *Id.*
[20] *Id.* at 331.

jeopardy violation, therefore, the *Price* Court credibly worried about the "risk or hazard of trial and conviction" stemming from the improper second charge.[21] In particular, it registered concern that the jeopardy-barred charge "induced the jury to find [the defendant] guilty of the less serious offense . . . rather than to continue to debate his innocence."[22] However, Thomas's second trial was a bench trial, so it is at least plausible that "the primary evil addressed in *Price*—the risk of jury prejudice—is not present" here.[23]

It is certainly true, as the magistrate judge concluded, that *Price* is "factually similar" to this case. But for the Louisiana Supreme Court's double jeopardy decision to be contrary to *Price*, *Price* must be more than just similar to Thomas's situation: it must contain a set of "facts that are materially indistinguishable" from this case.[24] Yet we have often said that judges, unlike juries, are presumptively insulated from any undue trial influence.[25] It does not matter that the Louisiana Supreme Court did not explicitly distinguish *Price* on these grounds—or address *Price* at all, for that matter.[26] In fact, state courts may avoid issuing decisions contrary to clearly established federal law even without "*awareness* of [the Supreme Court's] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."[27] We must then conclude that the Louisiana Supreme Court, in not applying *Price*

---

[21] *Id.*

[22] *Id.*

[23] *Renteria v. Adams*, No. C 08-5325 CRB, 2011 WL 89412, at *11 (N.D. Cal. Jan. 11, 2011).

[24] *Williams*, 529 U.S. at 405.

[25] *See, e.g.*, *United States v. Cardenas*, 9 F.3d 1139, 1156 (5th Cir. 1993) ("The prejudicial impact of erroneously admitted evidence in a bench trial is presumed to be substantially less than it might have been in a jury trial.").

[26] *See State v. Thomas*, 926 So.2d 490, 491 (La. 2006) (per curiam).

[27] *Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam); *Evans v. Davis*, 875 F.3d 210, 216 (5th Cir. 2017) ("In fact, [to survive review under the 'contrary to' clause,] the state habeas court need not even display awareness of the Supreme Court's cases . . . .").

in review of Thomas's Fifth Amendment claim, did not contravene clearly established federal law under AEDPA's relitigation bar.

**B.**

Even though the Louisiana Supreme Court's rejection of Thomas's Fifth Amendment claim was not contrary to *Price*, Thomas is still entitled to relief if he can show an unreasonable application of clearly established law. He claims that the Louisiana Supreme Court's analysis contains just that: by his reckoning, the Louisiana Supreme Court misapplied the framework established by *Price* and *Morris v. Mathews*.[28]

**i.**

The Louisiana Supreme Court's decision on Thomas's Fifth Amendment claim was laconic. It did not pause to explain why *Mathews* applies to Thomas's claim and, in light of that application, why he did not meet the standard *Mathews* sets out.[29] Our approach has been to look "not just [at] the arguments and legal theories the state court's opinion actually gave, but also any arguments or legal theories the state court reasonably *could have* given."[30] The continued viability of this approach after the Supreme Court's decision in *Wilson v. Sellers* is uncertain, however.[31] In *Wilson*, the Court explained that when the most recent state court to consider a constitutional issue provides a "reasoned opinion," we are to "review[] the specific reasons given by the state court and defer[] to those reasons if they are reasonable."[32] If the opinion "does

---

[28] 475 U.S. 237 (1986).

[29] In its Fifth Amendment opinion, the Louisiana Supreme Court only cited *Mathews* once, and the court never explained why it believed that case to have been more relevant than *Price*. The Louisiana Supreme Court also only declared that *Mathews* denied Thomas relief "because the verdict was not inherently tainted by virtue of its return in the trial of a jeopardy-barred offense." 926 So.2d at 491.

[30] *Langley v. Price*, 890 F.3d 504, 515 (5th Cir. 2018).

[31] 138 S. Ct. 1188 (2018).

[32] *Id.* at 1192.

not come accompanied with those reasons," however, we are to "look through" the decision to an earlier state court opinion and presume that the earlier one provides the relevant rationale.[33]

It is not entirely clear whether *Wilson* demands that we look to an earlier state opinion when the latest state court to consider the issue *did* provide an opinion, but only a vague or terse one—the *Wilson* Court was only directly concerned with a state court order "that was made without any explanatory opinion" whatsoever.[34] However, we need not reach that question here, because we cannot "look through" the Louisana Supreme Court's Fifth Amendment opinion: the Louisiana Supreme Court was the only state court to consider and reject Thomas's Fifth Amendment double jeopardy claim. Nor is it an answer that the Louisiana Supreme Court did not actually adjudicate the Fifth Amendment claim on the merits, and that it is therefore not entitled to AEDPA deference. That would be a misstep. While the Louisiana Supreme Court's opinion said little, it did adjudicate Thomas's Fifth Amendment claim on the merits under the standard that the Court has laid out;[35] and that leaves us at *Richter*'s door.[36]

*Richter*, confronted with a summary decision, a claim of unreasonable application, and no other state court opinion to look to, held that the appropriate course of action was to decide "what arguments or theories supports or . . . *could have supported*[] the state court's decision."[37] Thus, to

---

[33] *See id.*

[34] *Id.* at 1193.

[35] *See, e.g.*, *Richter*, 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.").

[36] *See Wilson*, 138 S. Ct. at 1195 ("*Richter* did not directly concern the issue before [the Court] . . . . [I]n *Richter*, there was no lower court opinion to look to.").

[37] *Richter*, 562 U.S. at 102 (emphasis added).

determine whether the Louisiana Supreme Court engaged in an unreasonable application of *Mathews*, we must "gather[] the arguments and theories that could support the state court's ultimate decision" and "ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent" with Supreme Court precedent.[38]

**ii.**

First of all, Thomas argues that the Louisiana Supreme Court's decision to apply *Mathews* represented an unreasonable application of clearly established law; *Price* is "the controlling ruling" here, according to him, and any invocation of *Mathews* was errant. We disagree. The extent to which this case is governed by *Mathews* or *Price* is subject to the kind of "fairminded disagreement" that AEDPA shields from our intervention.[39]

*Morris v. Mathews* is a double jeopardy case postdating *Price*.[40] In *Mathews*, the defendant pled guilty to aggravated robbery and was subsequently charged and convicted with aggravated murder.[41] But the aggravated murder conviction was premised on aggravated robbery as the predicate offense—a double jeopardy violation.[42] The state court of appeals modified the conviction to ordinary murder and correspondingly lowered the defendant's sentence.[43] The Supreme Court then held that habeas relief was inappropriate.[44]

By *Mathews*, "*Price* did not impose an automatic retrial rule whenever a defendant is tried for a jeopardy-barred crime and is convicted of a lesser included offense. Rather, the Court relied on the likelihood that the conviction

---

[38] *Evans*, 875 F.3d at 217 (internal quotation marks omitted).

[39] *Richter*, 562 U.S. at 103.

[40] *Morris v. Mathews*, 475 U.S. 237 (1986).

[41] *Id.* at 242.

[42] *Id.* at 243.

[43] *Id.*

[44] *Id.* at 248.

for manslaughter had been influenced by the trial on the murder charge—that the charge of the greater offense for which the jury was unwilling to convict also made the jury less willing to consider the defendant's innocence on the lesser charge."[45] Furthermore, according to the *Mathews* Court, "*Price* [does not] suggest[] that a conviction for an unbarred offense is inherently tainted if tried with a jeopardy-barred charge. Instead, [it] suggest[s] that a new trial is required *only when the defendant shows a reliable inference of prejudice*."[46]

Under *Mathews*, the rule is that defendants like Thomas must show "a reliable inference of prejudice" to warrant reversal on the basis of the Fifth Amendment. Again, a plausible way to read this rule alongside *Price* hinges on the identity of the factfinder and the accompanying likelihood that the greater offense charge induced it to convict the defendant. On that reading, it is not unreasonable to conclude that Thomas would have to do something more than the defendant in *Price* did to "show[] a reliable inference of prejudice" in his situation, since it is less likely that the issuance of a jeopardy-barred charge alone would unduly influence a judge—or make him "less willing to consider the defendant's innocence"—than a jury. Given the murky boundaries of *Price* and *Mathews*, we cannot say that the Louisiana Supreme Court unreasonably applied *Mathews*.

### iii.

Thomas argues that even if *Mathews* does apply, and even if it does require him to make an additional showing of "a reliable inference of prejudice" before his conviction may be reversed, the Louisiana Supreme Court unreasonably applied that standard. Under *Mathews*, a reliable inference of

---

[45] *Id.* at 245.

[46] *Id.* (emphasis added).

prejudice is tantamount to "a probability [of prejudice] sufficient to undermine confidence in the outcome."[47]

The Louisiana Supreme Court misapplied this standard, Thomas's argument goes, because he has shown prejudice in multiple ways. First, the greatest offense for which he could have been tried after the aggravated burglary acquittal was attempted aggravated burglary—the very offense that he was convicted of in his first trial. But if he were actually charged with attempted aggravated burglary, he could not have received the same conviction for unauthorized entry of an inhabited dwelling, since it is not a responsive verdict to attempted aggravated burglary. Thus, there is a reasonable probability that Thomas would not have been convicted of unauthorized entry of an inhabited dwelling but for the double jeopardy violation. Thomas also claims that the jeopardy-barred conviction exposed him to a greater number of responsive guilty verdicts and the possibility of higher sentencing ranges.

Louisiana responds by pointing out that no matter what felony Thomas were convicted of, he would be eligible for habitual offender proceedings, which, if successfully pursued, would result in a life sentence in prison without the possibility of parole. And Louisiana argues that there is little doubt that even in the absence of the jeopardy-barred charge, Thomas would have been charged and convicted of *some* felony, as he ultimately was after both trials.[48]

The dispute turns, then, on *what kind of prejudice* a defendant must show to a degree of reasonable probability under *Mathews*. Thomas claims that

---

[47] *Id.* at 475.

[48] At one point, Thomas argues that a charge of unauthorized entry of an inhabited dwelling could have yielded a conviction for a lesser included offense of misdemeanor trespass, but he provides no argument about how this is probable beyond mere theoretical possibility. The only difference between misdemeanor trespass and unauthorized entry of an inhabited dwelling is that criminal trespass covers uninhabited dwellings, and a judge already found the site of Thomas's trespass—an apartment—to be inhabited. *See State v. Simmons*, 817 So.2d 16, 20–21 (La. 2002).

11

it is enough to show that his particular conviction may not have obtained without the jeopardy-barred charge; Louisiana claims that more is required, and that the sentence or ultimate result must be meaningfully different in some way.

*Mathews* itself is here uncertain. At one point, it speaks of the defendant's need to show a reasonable probability "that he would not have been convicted of the nonjeopardy-barred offense absent the presence of the jeopardy-barred offense."[49] At another, it speaks more generally of a defendant's need to show a reasonable probability that "the result of the proceeding" would have been different without the jeopardy-barred offense.[50] At still another point, it suggests that a defendant must show a reasonable probability that the outcome of a trial on the convicted lesser included offense—here, unauthorized entry of an inhabited dwelling—would have been different.[51]

We cannot say that the choice among these alternatives is beyond the scope of "fairminded disagreement." It is possible to read *Mathews* for the proposition that a court must mechanically reverse Thomas's conviction since but for the state's decision to charge a jeopardy-barred offense there is a reasonable probability that he would have been convicted of some felony other than unauthorized entry of an inhabited dwelling, such as attempted aggravated burglary. But *Mathews* may also stand for the proposition that Thomas must show a reasonable probability that his sentence—the more practical "result" of the trial—would be meaningfully different. Or that the

---

[49] *Mathews*, 475 U.S. at 247.

[50] *Id.*

[51] *See id.* at 248 ("[T]he court's observation that the admission of questionable evidence 'may have prejudiced the jury' falls far short of a considered conclusion that if the evidence at issue was not before the jury *in a separate trial for murder*, there is a reasonable probability that respondent would not have been convicted." (emphasis added)).

12

result of a trial specifically for unauthorized entry of an inhabited dwelling would end in no conviction.

We must assume that the Louisiana Supreme Court had one of these latter interpretations of *Mathews* in mind; even if they do not reflect the interpretations that we would adopt in the first instance, we cannot say that they are unreasonable. So we must conclude that Thomas failed to meet his burden of showing a reasonable probability that a different result would have obtained without the jeopardy-barred aggravated burglary charge. Thomas has made no non-speculative showing that without the aggravated burglary charge, he would not have been convicted of a felony. And in the event of such a conviction, he has also made no showing that the state would not move to pursue habitual offender proceedings as it has twice before, putting him in precisely the same place as he is right now. If the proper reference point is taken to be a fresh trial specifically for unauthorized entry of an inhabited dwelling, Thomas has also made no showing that such a trial would end in anything other than his conviction—again, leaving him where he is now.

We therefore conclude that the Louisiana Supreme Court did not unreasonably apply *Mathews* in denying Thomas his requested relief upon his Fifth Amendment double jeopardy claim.

## IV.

Thomas also raises a Sixth Amendment ineffective assistance of counsel argument; he claims that his counsel was ineffective for failing to quash the jeopardy-barred aggravated burglary charge, a claim adjudicated on the merits and rejected by the Louisiana Supreme Court on state collateral review. Thus, as with Thomas's Fifth Amendment double jeopardy claim, we are bound by the strictures of AEDPA in reviewing it.

The underlying constitutional standard governing Thomas's Sixth Amendment argument is the familiar one derived from *Strickland*: the petitioner must show both that his "counsel's representation fell below an objective standard of reasonableness" and that this deficiency prejudiced him.[52] An error is prejudicial if it results in "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[53] The burden rests on the petitioner to show that a *Strickland* error was prejudicial.[54] Additionally, when *Strickland* arises in the context of AEDPA's relitigation bar—as it does here—we are confronted with two overlapping standards that are each "highly deferential."[55] "[W]hen the two [standards] apply in tandem, [our] review is 'doubly' so."[56]

**A.**

Unlike its opinion on direct review of Thomas's Fifth Amendment double jeopardy claim, the Louisiana Supreme Court's opinion on collateral review explains why it denied Thomas's ineffective assistance of counsel claim. It did so because it did not believe that Thomas had met his burden of showing prejudice under *Strickland*—"[d]efendant's prejudice argument is [] wanting," the Louisiana Supreme Court explained, "in light of the almost certain chance that he would have received the same habitual offender sentence, notwithstanding the filing of a timely motion to quash."[57] As in the Fifth Amendment context, this reflects an interpretation of prejudice pegged to what the court saw as the likely practical outcome of the proceedings and the sentence Thomas would receive even in the absence of a double jeopardy

---

[52] *Strickland v. Washington*, 466 U.S. 668, 688 (1984).

[53] *Id.* at 694.

[54] *See Richter*, 562 U.S. at 104.

[55] *See id.* at 105 (quoting *Strickland*, 466 U.S. at 689).

[56] *Id.* (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)).

[57] *State v. Thomas*, 124 So.3d 1049, 1057 (La. 2013).

No. 17-30178

violation: life in prison without the possibility of parole under Louisiana's habitual offender statute.

Thomas levels a preliminary charge at the form of the Louisiana Supreme Court's reasoning: the Louisiana Supreme Court's analysis took the wrong tack because it variously cited *Lockhart v. Fretwell* for the proposition that a *Strickland* prejudice analysis must provide due attention "to whether the result of the proceeding was fundamentally unfair or unreliable."[58] *Lockhart*'s prescription, however, "do[es] not justify a departure from a straightforward application of *Strickland* when counsel's ineffectiveness deprives the defendant of a substantive or procedural right to which the law entitles him."[59] Fixing on these citations, Thomas argues that the Louisiana Supreme Court unreasonably applied the law. But while the Louisiana Supreme Court's citations to *Lockhart* were indeed inapt, the court went on to engage in a "straightforward application of *Strickland*" that ended in the determination that Thomas had not been prejudiced, and that he therefore was not deprived of any Sixth Amendment right.[60] Because "a state court need not cite or even be aware of [the operative Supreme Court] cases under § 2254(d),"[61] the only question is whether the "reasoning []or the result of the state-court decision contradicts them."[62] We now ask whether the Louisiana Supreme Court unreasonably applied clearly established law in its *Strickland* analysis.

**B.**

No party disputes—and all tribunals to this litigation have so far concluded—that Thomas's counsel was deficient in failing to move to quash the

---

[58] 506 U.S. 364, 369 (1993); *see Thomas*, 124 So.3d at 1054.

[59] *Williams v. Taylor*, 529 U.S. 362, 363 (2000).

[60] *See Thomas*, 124 So.3d at 1056–57.

[61] *Richter*, 562 U.S. at 98.

[62] *Early*, 537 U.S. at 8.

15

jeopardy-barred charge. The sole disagreement spins on *Strickland*'s prejudice prong. As with his Fifth Amendment argument, Thomas relies principally on the fact that the aggravated burglary charge resulted in a conviction for a specific offense that he may not have otherwise received. Yet the Louisiana Supreme Court responded to this argument, and it mirrors the response we have outlined above: even assuming a reasonable probability of a conviction for a different offense in the absence of the aggravated burglary charge, Thomas fails to show a reasonable probability that his final sentence would be any different, due to his status as a habitual offender.[63]

The operative question is largely a repeat of the one we confronted in the Fifth Amendment context: is the Louisiana Supreme Court's interpretation of the necessary prejudice showing an unreasonable application of Supreme Court precedent? The only difference is that for his Sixth Amendment claim, that Supreme Court precedent includes *Strickland*.

Thomas claims that a showing of a reasonable probability that a defendant would not have been convicted of precisely the same offense but for his counsel's error amounts to prejudice, pointing to *Murphy v. Puckett*.[64] But *Murphy* cannot bear the weight of Thomas's argument for at least two reasons. First, it is Fifth Circuit precedent and not Supreme Court precedent. For the purposes of AEDPA, only the latter counts as "clearly established" law.[65] Second, and more to the point, *Murphy* sweeps more narrowly than Thomas suggests. In *Murphy*, we did say that a defendant could show *Strickland* prejudice when his lawyer failed to "raise what was clearly a valid double

---

[63] *See Thomas*, 124 So.3d at 1057 ("Defendant's prejudice argument is thus wanting in light of the almost certain chance that he would have received the same habitual offender sentence, notwithstanding the filing of a timely motion to quash.").

[64] 893 F.2d 94 (1990).

[65] *See, e.g.*, *Renico v. Lett*, 559 U.S. 766, 778–79 (2010).

jeopardy defense."[66] But importantly, in *Murphy*, the defendant had been convicted in his initial trial, not implicitly acquitted like Thomas. That means when the state charged him a second time, all lesser included offenses were jeopardy-barred—there was nothing available for the state to cure the violation.[67] *Murphy* specifically distinguished *Mathews* on that ground;[68] it does not speak to a situation in which the state secured a conviction for a non-barred offense after charging a barred one.

Beyond *Murphy*—and *Mathews*—Thomas points to no law suggesting that the Louisiana Supreme Court's interpretation of *Strickland* prejudice is unreasonable. Once again, AEDPA demands that we overturn a state court's decision only if it is beyond the pale of fairminded dispute. The Louisiana Supreme Court's decision is not. The Louisiana Supreme Court did not here unreasonably apply *Strickland* in holding that Thomas was not prejudiced by his counsel's failure to quash his jeopardy-barred charge.

## V.

We reverse the judgment of the district court and deny Thomas's petition for habeas relief. Appellant's Unopposed Second Motion to Expedite Appeal is denied as moot. The mandate shall issue forthwith.

---

[66] 893 F.2d at 95.

[67] *See id.* at 97.

[68] *See id.*