# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 30, 2022

Lyle W. Cayce
Clerk

No. 20-40563

RONALD BLAKE FEARS,

*Petitioner—Appellant*,

*versus*

BOBBY LUMPKIN, *Director*,
*Texas Department of Criminal Justice*, *Correctional Institutions Division*,

*Respondent—Appellee*.

Appeal from the United States District Court
for the Southern District of Texas
No. 1:19-CV-184

Before SMITH, CLEMENT, and HAYNES, *Circuit Judges*.

PER CURIAM:[*]

A Texas jury convicted Ronald Fears of continually sexually abusing his stepdaughter. Fears says his trial counsel inadequately defended him by allowing the introduction of harmful, inadmissible evidence. The Texas Court of Criminal Appeals ("CCA") disagreed; it denied Fears's state habeas

---

[*] Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIRCUIT RULE 47.5.4.

No. 20-40563

corpus petition after concluding that he had suffered no prejudice.

Fears tried again in federal court but met the same fate.  We review that denial under the unforgiving standard required by the Antiterrorism and Effective Death Penalty Act ("AEDPA").  Although Fears's claim is compelling, we cannot say that every reasonable jurist would agree that he suffered prejudice.  We affirm the denial of his habeas petition.

I.

A.

When Fears's stepdaughter, C.T., was fourteen years old, she confided to a friend that Fears had been sexually abusing her for years.  C.T.'s friend persuaded her to tell an adult family friend about the abuse.  That friend reported C.T.'s account to police and Child Protective Services.

Investigators deemed C.T.'s story credible.  But physical examinations failed to turn up corroborating evidence.  That does not necessarily indicate that no abuse occurred, but it meant that the state's case against Fears would live or die on C.T.'s credibility.

C.T., however, had a history of deception.  So some had difficulty believing her claims.  In fact, at the time of Fears's trial, neither C.T.'s mother nor her grandmother believed Fears had abused C.T.  Fears relied in part on their testimony to make his case that C.T. had fabricated her story.

In response, the state highlighted the consistency of C.T.'s recitals over time.  One way it did that was through the testimony of those who had interviewed C.T.  But it needed to tread lightly because Texas law strictly limits witnesses' ability to comment on other witnesses' credibility.

Texas law requires lay witnesses to stick to matters rationally within their perception that can aid the jury.  TEX. R. EVID. 701. Similarly, expert witnesses may opine only when doing so can "help the trier of fact to under-

No. 20-40563

stand the evidence or to determine a fact in issue." TEX. R. EVID. 702. Under those rules, experts cannot "give an opinion that [a] complainant . . . is truthful,"[1] and lay witnesses cannot give "[d]irect opinion testimony about the truthfulness of another witness[ ] without prior impeachment."[2] Some Texas courts have described those principles as one rule: A witness cannot "offer a direct opinion as to the truthfulness of another witness."[3] That rule "applies to expert and lay witness testimony alike."[4]

Fears points to five instances where witnesses strayed at least close to the line marked by that rule.

*First*, the state asked C.T.'s friend, "[D]id you believe that [oral sex] had happened between [C.T.] and her stepfather?" She replied, "Yes."

*Second*, the adult who reported C.T.'s allegations to the police testified that she was "close enough to [C.T.] to believe she would not mislead [her]."

*Third*, Fears's lawyer asked a witness, after describing him as a "veteran police officer," whether it was a good idea to have interviewed C.T. in detail about the alleged abuse. The officer said that it was. And he said he thought "a crime had occurred just based solely on [C.T.'s] testimony."

*Fourth*, another officer said he "believe[d] that [the] crime had occurred" because of C.T.'s "consistent statements . . . and the details that

---

[1] *Yount v. State*, 872 S.W.2d 706, 712 (Tex. Crim. App. 1993) (en banc).

[2] *Lopez v. State*, 343 S.W.3d 137, 140 (Tex. Crim. App. 2011). Once a witness's "character for truthfulness has been attacked," another witness may offer testimony about that witness's reputation for truthfulness or his opinion about that witness's truthfulness. TEX. R. EVID. 608(a).

[3] *Blackwell v. State*, 193 S.W.3d 1, 21 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd).

[4] *Id.* (citing *Arzaga v. State*, 86 S.W.3d 767, 776 (Tex. App.—El Paso 2002, no pet.), and *Fisher v. State*, 121 S.W. 3d. 38, 41 (Tex. App.—San Antonio 2003, pet. ref'd)).

she gave." He explained that he doesn't always refer cases for prosecution but that he had referred C.T.'s case, further implying that he believed her. He later dismissed the suggestion that C.T. was just "being rebellious" and opined that children do not "use that type of an outcry for rebellion against the parent." He said his assessment of C.T.'s truthfulness was based on her "demeanor change[ ]" as the interview's topic shifted to sexual abuse. Because she showed strong "emotion," the officer thought C.T. had been "traumatized."

*Fifth*, an investigator for Child Protective Services told the jury that he had found "reason to believe" Fears had abused C.T. He based that conclusion on the "consisten[cy]" of C.T.'s testimony and the "details" she gave.

Fears's lawyers did not object to any of that testimony. In some cases, they elicited it.

The jury convicted Fears of several serious sex crimes. He was sentenced to fifty years' imprisonment.

Fears unsuccessfully appealed, then filed a state habeas petition. He claimed that his trial counsel had been constitutionally ineffective in failing to object to the five opinions we have just described. Fears's petition languished in procedural limbo for a few years.

Eventually, a state district court recommended that Fears receive a new trial. It found that the original "trial court would have granted a motion in limine to exclude opinion testimony [concerning C.T.'s] credibility." Reasoning that the evidence in question "made . . . the State's case significantly more persuasive by improperly bolstering C.T.'s credibility in a case where her credibility was paramount," it concluded that Fears's counsel had prejudiced his defense with constitutionally deficient representation.

The CCA disagreed. It tersely reported that it had "review[ed] the

record" and "conclude[d] that [Fears] ha[d] not shown that he was prejudiced" under the second prong of *Strickland v. Washington*, 466 U.S. 668 (1984).  So it denied his petition.

## B.

Fears petitioned the federal district court for habeas relief.  Among other grounds, he again asserted that his trial representation was constitutionally deficient.  He said the failure to object to the bolstering testimony prejudiced him because the case turned on C.T.'s credibility.

The court denied his petition in a summary judgment.  As relevant here, it adopted the magistrate judge's report, which recommended concluding that the challenged evidence did not prejudice Fears even if it was erroneously admitted.  Applying AEDPA's deferential standard, it explained that the CCA might reasonably have concluded that the bolstering evidence added little to the state's case because the jury otherwise heard enough evidence to "formulate its own opinion of [C.T.'s] credibility."

The district court also denied Fears a certificate of appealability ("COA") after concluding that none of his claims raised issues that were "debatable among jurists of reason[ ] and that Fears fail[ed] to make a 'substantial showing of the denial of a constitutional right.'"  (Quoting 28 U.S.C. § 2253(c)(2).)

Fears then asked this court for a COA regarding only his ineffective-assistance claim.  We granted the COA to decide "whether the state courts' rejection of the claim of ineffective assistance of counsel . . . was entitled to deference under [AEDPA]."

## II.

Our review is *de novo* because the district court denied Fears's petition in a summary judgment.  *Guy v. Cockrell*, 343 F.3d 348, 351–52 (5th Cir. 2003).

And we review only the question contained in the order granting the COA. *See* 28 U.S.C. § 2253(c)(1)(A).

The AEDPA standard under which federal courts review state merits adjudications of prisoners' constitutional claims is familiar. A habeas petition arising from a state merits adjudication "shall not be granted" unless the state system's final decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1). Contrariness means that a decision "relies on legal rules that directly conflict with prior" Supreme Court decisions or "reaches a different conclusion . . . on materially indistinguishable facts." *Busby v. Dretke*, 359 F.3d 708, 713 (5th Cir. 2004). An unreasonable application "correctly identifies the governing legal principle . . . but unreasonably applies it to the facts of the particular case." *Id.* (quoting *Bell v. Cone*, 535 U.S. 685, 694 (2002)). In either case, a petitioner must show "that the state court's ruling on [his claims] was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

Fears advances two reasons to discard that deference here. Both reasons rely on the brevity of the CCA's opinion. Neither is ultimately dispositive.

A.

*First*, Fears invokes *Andrus v. Texas*, 140 S. Ct. 1875 (2020) (per curiam). There, the Court vacated a CCA decision in another ineffective-assistance case and remanded for the CCA to "address the prejudice prong" of the legal standard. *Id.* at 1887. Fears says his case is similar because the CCA again "fail[ed] to conduct a meaningful prejudice analysis" by issuing an essentially summary denial. That, he claims, continues a "practice of

No. 20-40563

summarily rejecting without explanation a habeas trial judge's fact-findings and recommendation to grant relief."

Irrespective of whether the CCA has any such "practice," it has nothing to do with *Andrus*. That decision turned on the Supreme Court's inability to discern the analytical prong on which the CCA had rejected a petition. *Id.* at 1886–87. Here, the CCA left no doubt: It said Fears had "not shown that he was prejudiced." We thus have no difficulty identifying the decision entitled to our deference, so *Andrus* is inapposite.

Summary rulings are entitled to AEDPA deference. *Richter*, 562 U.S. at 99. This case is no exception.

B.

*Second*, Fears reasons that we must "look through" the CCA's decision to the lower state court's decision because the CCA "provided no rationale for its no-prejudice decision." That position relies on *Wilson v. Sellers*, 138 S. Ct. 1188 (2018), where the Court authorized a similar procedure in some circumstances. The idea is that it can be hard to figure out whether a state decision has been faithful to clearly established federal law if the state court does not explain itself. *Id.* at 1192. In such cases, federal courts can "presume that the unexplained decision adopted" the reasoning of the "last related state-court decision that does provide a relevant rationale." *Id.*

Here, we cannot look through to the state trial habeas court's decision for two reasons. *First*, Fears has forfeited his position. *Second*, it makes no sense to attribute the lower state court's reasoning to the CCA where the CCA disagreed about how to resolve the case.

Fears never told the federal district court that it ought to have examined the state habeas court's reasoning. Instead, he told the magistrate judge that the CCA's decision "involved an unreasonable application of [federal

law] and appears to have been based on an unreasonable determination of the facts." In other words, he recited the ordinary AEDPA standard. The magistrate judge then cited *Wilson* in support of the *contrary* proposition: that the magistrate judge's review was of the CCA's "decision alone." (Quotation omitted.) Still, Fears said nothing of deference in his objections to the magistrate judge's report.

The first time Fears mentioned *Wilson* or looking through the CCA's decision was in his application to this court for a COA.

But Fears cannot raise this position for "the first time on appeal." *Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021). To preserve it for our review, he needed to "identify it as a proposed basis for deciding the case." *Pickett v. Tex. Tech Univ. Health Scis. Ctr.*, 37 F.4th 1013, 1037 (5th Cir. 2022) (quotation omitted and alterations adopted). In other words, he needed to tell the district court to grant his petition at least in part because it needed to defer to the lower state court's reasoning recommending that he get a new trial. *See id.* But he never even mentioned that possibility to the district court.

Parties may forfeit their pleas to attribute a lower state court's reasoning to a state court of last resort. That's because looking through under *Wilson* does not alter the standard of review.

Standards of review cannot be forfeited. *United States v. Vasquez*, 899 F.3d 363, 380 (5th Cir. 2018). So parties cannot forfeit the question whether to apply AEDPA at all. *Ward v. Stephens*, 777 F.3d 250, 257 n.3 (5th Cir. 2015), *abrogated on other grounds*, *Ayestas v. Davis*, 138 S. Ct. 1080 (2018).

This question is different. Regardless of whether we look through to the trial court's reasoning, the standard of review is the same: We apply AEDPA to the state highest court's decision. To "look through" is just to attribute another court's reasoning *to* the high court. *Wilson*, 138 S. Ct.

at 1192 (instructing courts to "presume that the unexplained decision adopted the same reasoning"). Because it does not alter the standard of review, Fears's position is an ordinary merits contention that can be forfeited. *See Howard v. Davis*, 959 F.3d 168, 172 n.9 (5th Cir. 2020) (collecting cases).

But Fears need not worry that his forfeiture altered the outcome. His position is also foreclosed by *Thomas v. Vannoy*, 898 F.3d 561, 569 (5th Cir. 2018), which held that we "cannot 'look through' the [state high court's] opinion [where it] was the only state court to consider and reject [a] claim." After all, *Wilson*'s look-through procedure is a rebuttable presumption. *Wilson*, 138 S. Ct. at 1192. What could better rebut the presumption that a state high court adopted a lower state court's reasoning than the fact that the two courts reached different conclusions?

Accordingly, we apply AEDPA deference to the CCA's decision holding that Fears has "not shown that he was prejudiced."

## III.

To prevail, Fears must identify "an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103. He posits such an error in the CCA's application of *Washington*.

*Washington* established a two-part test for evaluating trial counsel's effectiveness. First comes deficiency. To satisfy the Sixth Amendment, a defendant's lawyer must provide "reasonably effective assistance"—assistance, that is, that conforms to "prevailing professional norms." *Washington*, 466 U.S. at 687–88. Next comes prejudice. Even if a lawyer's performance was not reasonably effective, the Constitution is not offended "if the error had no effect on the judgment." *Id.* at 691.

Though the test has a first and second prong, we do not always pro-

No. 20-40563

ceed in that order.  We should not address the deficiency prong if we conclude that the defendant suffered no prejudice.  *Bouchillon v. Collins*, 907 F.2d 589, 595 (5th Cir. 1990).  Our objective is "not to grade counsel's performance." *Washington*, 466 U.S. at 697.  So if a defendant cannot get relief, there is no sense in debating deficiency.

That is true here.  Because we conclude that Fears cannot satisfy the AEDPA standard on the prejudice prong, our inquiry begins and ends there.

## A.

A defendant shows prejudice where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

Fears must show that the CCA's application of that standard was "unreasonable." *See Richter*, 562 U.S. at 112.  And our deference to the CCA in this area is further heightened—we must apply "doubly deferential judicial review." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).  Our review is doubly deferential because AEDPA and *Washington* require deference to the state court and the trial lawyer, respectively. *Richter*, 562 U.S. at 105.  Double deference applies to both the deficiency and prejudice prongs.[5]

Satisfying that doubly deferential standard means that "every reasona-

---

[5] *Richter*, 562 U.S. at 105; *Cullen v. Pinholster*, 563 U.S. 170, 202 (2011); *Anaya v. Lumpkin*, 976 F.3d 545, 554 (5th Cir. 2020).  Our decisions contain some contrary statements, but those must yield to *Pinholster* and *Anaya* because no case holding that double deference does not apply to the prejudice prong is precedential. *See Sanchez v. Davis*, 888 F.3d 746, 749 (5th Cir. 2018) (single-judge order); *Spicer v. Cain*, No. 18-60791, 2021 WL 4465828, at *9 (Sept. 29, 2021) (unpublished).  Nor could those cases displace *Pinholster*, since neither construed its holding. *See Gahagan v. U.S. Citizenship & Immigr. Servs.*, 911 F.3d 298, 302 (5th Cir. 2018).

No. 20-40563

ble jurist would conclude that it is reasonabl[y] likely that" Fears would have been acquitted had his trial counsel objected to the bolstering testimony. *Adekeye v. Davis*, 938 F.3d 678, 684 (5th Cir. 2019). "[E]ven a strong case for relief" may not be enough. *Id.* (quoting *Richter*, 562 U.S. at 102).

## B.

Fears's strongest rationale for finding prejudice is that the state's case turned on C.T.'s credibility. He thinks the bolstering testimony—particularly that of the three investigators with substantial experience investigating child-sex-abuse cases—"carr[ied] exceptional weight and an aura of reliability" in the jurors' minds. (Quotation omitted.) Although those witnesses were not qualified as experts, Fears contends the jury likely thought of them as similarly authoritative. The case, he maintains, "depended on [C.T.'s] credibility," and the conflicting evidence on that point meant that the jury needed help deciding whom to believe.

But the importance of C.T.'s credibility cuts both ways. As the state observes, the jury knew that its task was to decide whether C.T. was telling the truth. The jury had plenty of opportunities to assess her credibility itself—it could compare her trial testimony with her prior accounts, scrutinize her demeanor in court, and consider the evidence of her past perfidy. What's more, even if the investigators had kept their assessments of C.T.'s truthfulness to themselves, their belief in her story would have been implicit anyway because the investigation progressed to an indictment and a trial based on their conclusions.

On that view, the challenged testimony was just cumulative evidence of C.T.'s credibility. And the introduction of cumulative evidence is

11

harmless.[6]

Fears replies that, under Texas law, the bolstering evidence could not have been cumulative because bolstering evidence is treated differently from other evidence of credibility. That is, after all, the whole point of a rule against "offer[ing] a direct opinion as to the truthfulness of another witness." *Blackwell*, 193 S.W.3d at 21.

The question, however, is one not of Texas law but, instead, is whether, as a matter of federal constitutional law, an error was sufficiently likely to have influenced the jury that it "undermine[s] confidence in the outcome." *Washington*, 466 U.S. at 694. It would be different if Texas law treated the introduction of improperly bolstering evidence as *per se* reversible error. If that were true, we would know that counsel's failure to object changed the outcome. But that's not so. Consider *Lopez v. State*, 343 S.W.3d at 143, where the CCA reversed a conviction based in part on bolstering testimony but remanded for further development on the question "why trial counsel failed to object" to its introduction. If the introduction of bolstering testimony were *per se* reversible error, remanding would have been pointless: No "reasonably sound strategic motivation" could have explained the decision not to object. *Id.*

Given that Texas law does not control the outcome, the appropriate resolution is debatable by reasonable jurists. One rationally could conclude that the bolstering evidence gave the jury nothing it didn't already have. From that perspective, the investigators' conclusions were based on the same facts available to the jury, and their belief in C.T.'s story was already implicit

---

[6] *United States v. El-Mezain*, 664 F.3d 467, 526 (5th Cir. 2011); *United States v. Escamilla*, 852 F.3d 474, 487 (5th Cir. 2017); *United States v. Hall*, 500 F.3d 439, 444 (5th Cir. 2007).

No. 20-40563

because each of them advanced the case against Fears. That perspective is reconcilable with the applicable Supreme Court caselaw.

AEDPA requires us to defer to the CCA's no-prejudice decision. The judgment is AFFIRMED.