# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### February 25, 2025 Session

## STATE OF TENNESSEE v. GARY ROLLINS

**Appeal from the Criminal Court for Knox County**
**No. 118002   Hector Sanchez, Judge**

_____

**No. E2023-01808-CCA-R3-CD**

_____

FILED

APR 23 2025

Clerk of the Appellate Courts
Rec'd by _____

Gary Rollins, Defendant, was charged with one count of rape of a child and two counts of aggravated sexual battery in September of 2020. At the conclusion of the first trial, the jury found Defendant not guilty of rape of a child but could not reach a verdict on the lesser-included offenses of rape of a child. The jury could not reach a verdict on either count of aggravated sexual battery. The trial court granted a mistrial for the remaining lesser-included offenses of rape of a child and the two counts of aggravated sexual battery. In a second trial on the same presentment, Defendant was again tried for rape of a child. The jury found Defendant guilty of rape of a child and two counts of aggravated sexual battery. At sentencing, Defendant challenged the rape of a child conviction for the first time on the basis that it violated double jeopardy. The trial court agreed, entering a judgment for the lesser-included offense of attempted rape of a child. The trial court sentenced Defendant to twenty years for the attempted rape of a child conviction and fifteen years for each aggravated sexual battery conviction. The trial court ordered the sentences to run consecutively, for a total effective sentence of fifty years. On appeal, Defendant argues that the trial court abused its discretion by allowing the State to introduce evidence of a prior bad act in violation of Tennessee Rule of Evidence 404(b), that his second trial for rape of a child violated his right against double jeopardy, and that the trial court had no authority to modify the conviction on the jeopardy-barred offense to attempted rape of a child. Because the Defendant failed to demonstrate a reasonable probability that he would not have been convicted of the attempted rape of a child absent the presence of the charge of rape of a child and because the trial court did not abuse its direction by allowing the State to introduce evidence of a prior bad act, we affirm the convictions.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which MATTHEW J. WILSON, J., and W. MARK WARD, SP. J., joined.

Julia Trant, Knoxville, Tennessee, for the appellant, Gary Len Rollins, Sr.

Jonathan Skrmetti, Attorney General and Reporter; Richard D. Douglas, Senior Assistant Attorney General; Charme P. Allen, District Attorney General; and Ashley McDermott and Franklin Ammons, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

This case presents a unique scenario rarely seen in the legal world where a defendant faced two jury trials on the same presentment after having been partially acquitted of the same charges at the first trial. In September of 2020, the Knox County Grand Jury issued a presentment charging Defendant with one count of rape of a child (Count One) and two counts of aggravated sexual battery (Counts Two and Three) for incidents involving Defendant's grandson, then known as W.S.,[1] that occurred between September 2009 and October 10, 2014.

The matter proceeded to a jury trial for the first time in May of 2022 before Judge Kyle A. Hixson.[2] The complete trial transcript from the first trial does not appear in the record on appeal. The "Transcript of Verdict" that is part of the record on appeal indicates that after deliberating for a time in the first trial, the jury informed the court that they found Defendant not guilty of rape of a child but were "unable to come to a unanimous vote on Count [One] - - attempted rape of a child" and asked for the next step. The jury foreman specifically informed the trial court that the jury reached a "not guilty" verdict on the charged offense of rape of a child but that they could not reach a unanimous determination as to the lesser-included offenses. Counsel for Defendant moved to dismiss Count One. The trial court granted "a mistrial with a verdict of not guilty entered for the charged offense of rape of a child." The trial court commented "[a]t this point we still have Counts [Two] and [Three] hanging out there for your deliberation." The jury continued to deliberate on the remaining charges, eventually informing the trial court that they were unable to reach a verdict on Count Two, aggravated sexual battery. Counsel for Defendant moved for a mistrial. The trial court sent the jury back to continue to deliberate. The jury

---

[1] It is the policy of this Court to protect the identity of minor victims of sexual abuse. W.S. and two siblings were ultimately adopted and changed their names. Because all three of the children have the same initials after adoption, we will refer to the victim and his siblings, A.N.S and A.K.S., by their original initials for clarity whenever necessary.

[2] The Honorable Kyle A. Hixson was appointed to the Tennessee Court of Criminal Appeals on September 1, 2022.

returned and reported that they were deadlocked on the first count of aggravated sexual battery. As a result, the trial court granted a mistrial as to Count Two. After deliberating on Count Three, aggravated sexual battery, the jury informed the trial court that they were unable to reach a unanimous verdict. The trial court granted a mistrial as to Count Three.

Apparently, without any explanation from the State or challenge from Defendant, Defendant proceeded to a second jury trial on the original presentment for one count of rape of a child and two counts of aggravated sexual battery. As conceded at oral argument and as the record demonstrates, the same counsel represented Defendant and the same prosecutor represented the State at both trials. Astoundingly, neither counsel said a word to the new trial judge about the previous trial and the resulting acquittal or the dead locked jury.

Prior to the second trial, Defendant moved to exclude evidence of a prior bad act pursuant to Tennessee Rule of Evidence 404(b), specifically "but not limited to any references to any and all protective orders issued based on [Defendant's] prior criminal conviction(s)." At a jury-out hearing, the victim, who was born in 2003, testified that Defendant was his biological grandfather. The victim recalled an incident when he was "[a]bout three or four" years old at Defendant's house when Defendant "wanted [him] to go into [Defendant's] room" and "pull [his] pants down." The victim "ran out of the room." The victim claimed Defendant "tried to touch" him on the penis. The victim reported this incident during a forensic interview but could not remember which specific forensic interview because he was interviewed several times. On cross-examination, the victim admitted that he was in foster care twice, once when he was four and once in 2014. The victim was adopted in 2017. Counsel for the State informed the trial court that there were five forensic interviews of the victim and that he mentioned this specific incident during three different interviews, for the first time in June 2015.

The trial court determined that the incident was "relevant" to "go to [Defendant's] intent" because the probative value was high "to show when this treatment toward the alleged victim started to occur and more importantly, it goes to illustrate [Defendant's] intent to achieve sexual arousal or gratification." The trial court indicated that it had tested the credibility of the victim's testimony by questioning him about the incident and was satisfied that the victim could relate the incident to both the location and events that took place near that same time. The trial court ultimately ruled that the probative value outweighed the prejudicial effect and permitted the State to ask the victim about the uncharged incident.

At trial, the victim testified that he was born in 2003 and was nineteen at the time of trial. The victim explained that Defendant was his "step biological grandfather." The victim and his two sisters visited Defendant and his wife "pretty frequent[ly]," especially

- 3 -

after visits to their dentist located within walking distance of Defendant's home. The victim explained that his sister A.K.S. was two years older than him and his sister A.N.S. was two years younger than him.

The victim described the layout of Defendant's house in detail. The victim testified to the "first incident." The victim remembered "being at [Defendant's] house." The victim went to Defendant's room, and Defendant told him to "pull [his] pants down." The victim ran out of the bedroom. The victim was three or four years old. The trial court gave a 404(b) instruction to the jury after this testimony. On cross-examination, the victim explained that he and his sisters were placed in foster care for three months when he was four years old.

The victim testified to another incident that occurred when he was "[s]even or eight" after he, his sisters, and his parents went to Defendant's house after a dentist appointment. The victim's parents left to go to the grocery store. The victim's parents left the children at the house with Defendant and "maybe" Defendant's son, who "typically just stayed in his room." They were "sitting there watching tv and [Defendant] . . . asked [the victim] if [he wanted] to come to the room." The victim was interested in history and "thought since [Defendant] was a veteran . . . he might have something to show [him]." When they entered the Defendant's bedroom, Defendant closed the door and told the victim to "pull [his] pants down." The victim complied and Defendant "started to masturbate" the victim and told the victim to "start masturbating him." Defendant touched the victim's penis initially with "[h]is hand" and "was moving it up and down." The victim then touched Defendant's penis with his hand and used the same movements. Then, Defendant told the victim to "turn over on the bed." Again, the victim complied, turning to face the bed, and Defendant "proceeded to insert his penis into" the victim's "butt." The victim testified that it felt "[w]eird" and that he knew that Defendant ejaculated because he "felt a substance . . . inside" his body. The victim "heard the door" and thought his parents were back from the store, so he and Defendant "hurried and put . . . pants back on and . . . walked out of the room." The victim could not recall what he or Defendant were wearing that day. The victim was "afraid" because he "didn't know what would happen" if he told anyone about the incident. The victim did not think that anyone would believe him if he disclosed the incident, so he did not tell anyone until years later.

The victim went to ChildHelp, a facility equipped to perform forensic interviews of children, "[q]uite a bit." The victim was interviewed several times at ChildHelp and "disclosed a little bit more information" each time. The victim explained it was difficult to talk about "[b]eing anally penetrated." The victim did not disclose any abuse during his first interview on October 13, 2014. The second interview occurred after the victim's foster father caught him "humping a pillow naked." During the second interview in August of - 2016, the victim disclosed the incident with Defendant that took place when he was three

- 4 -

or four. During the third interview, the victim "disclosed information about being masturbated" but did not disclose the rape. During the final interview, the victim "disclosed the entire story."

The victim's foster father[3] testified that he caught the victim "humping a pillow" in June of 2016. The foster father talked to the victim afterward. Later that day, the victim told him that Defendant "had made him touch [Defendant's] penis and [Defendant] touched [the victim's] penis" and that Defendant "tried to penetrate his butt." The victim's foster father testified that the victim had good character for truthfulness.

After the victim disclosed the abuse, the Knoxville Police Department interviewed Defendant. Investigator Timothy Thornton with the office of the Inspector General testified at trial. He was formerly employed at the Knoxville Police Department and assisted in Defendant's interview in October of 2016 at the Knoxville Police Department. Defendant agreed to talk to officers. Defendant was not informed of the allegations at the beginning of the interview. Unprompted, Defendant told officers about sexual difficulties that he had experienced. Investigator Thornton described Defendant's statements as "kind of" unusual that Defendant would share this information without being prompted or asked.

At the conclusion of the trial, the jury found Defendant guilty as charged in the presentment of one count of rape of a child and two counts of aggravated sexual battery. At the sentencing hearing, counsel for Defendant challenged the conviction for rape of a child based on a double jeopardy violation for the first time even though she had represented Defendant at the first trial. The trial court commented that Defendant was tried in March of 2022 and that "unfortunately . . . there wasn't any verdict form to support the fact but for the back of the file that indicates that in that particular trial . . . the jury . . . unanimously found that [Defendant] was not guilty as to the charged offense and subsequently hung on any lesser-included offense of Count 1 as well as Counts 2 and 3." The trial court acknowledged that in Defendant's second trial, he was "ultimately convicted as charged of rape of a child in Count 1 and then . . . sexual battery in counts 2 and 3." The trial court expressed "major concern" that Defendant was "tried on an offense in which he had already been acquitted."

Counsel for the State, who also represented the State at the first jury trial, introduced the jury verdict transcript from the first trial as an exhibit. Counsel for the State asked the trial court to find that "despite the fact that the jury did not have a compromise[d] verdict for the [trial court] as its role as 13th juror to find him guilty of the attempted rape of a child." Counsel for the State asserted that Defendant was a Range II offender and asked

---

[3] Defendant's foster father eventually became his adoptive father. We have chosen not to use his name to further protect the victim's identity.

the trial court to sentence Defendant to twenty years on each aggravated sexual battery conviction to be served consecutively to each other but concurrently with the sentence for attempted rape of a child.

Counsel for Defendant argued that "there was a violation of [Defendant's] constitutional right against double jeopardy" when the State "chose to try him on a rape of a child" in the second trial. Counsel further argued that the evidence about the rape "prejudiced" the entire trial and asked the trial court to "set aside the judgment" and conviction for rape of a child.

The trial court took "some responsibility" for the Double Jeopardy violation and acknowledged that a different judge presided over the first trial and that there was a different court clerk at that time. However, the trial court noted that counsel for the State and counsel for Defendant participated in both trials and that neither said anything about the charges. Counsel for Defendant admitted that Defendant told her he had been acquitted "after the trial" but did not remember specifically because she "tried so many cases."

The trial court found that a "double jeopardy violation certainly did occur" because Defendant "should not have been retried after being acquitted by a jury of his peers just one year prior as to the charged offense of rape of a child." The trial court told the parties that it had "some discretion as the 13th juror" and "in an effort to kind of fix what [ha]s been done here as best we can the [c]ourt is going to set aside the verdict with regard to Count 1 charging [Defendant] with rape of a child." The trial court then decided to "institute" the lesser-included offense of attempted rape of a child because the State "would have put on the same proof had he been charged with attempted rape of a child" so there was no prejudice to Defendant.

The trial court found that Defendant was a Range II offender based on prior convictions. The trial court sentenced Defendant to twenty years for the attempted rape of a child conviction and fifteen years for each aggravated sexual battery conviction. The trial court ordered the sentences for aggravated sexual battery to be served consecutively to each other and ordered one count of aggravated sexual battery to be served consecutively to the twenty-year sentence for attempted rape of a child, for a total effective sentence of fifty years. Defendant timely filed a notice of appeal.

*Analysis*

*Prior Bad Acts*

Defendant first argues that the trial court erred by admitting evidence of an uncharged incident. Specifically, Defendant complains that the victim was allowed to

- 6 -

testify about an incident that occurred when he was three or four years of age when Defendant directed the victim to pull down his pants and that this evidence was highly prejudicial. The State insists that the trial court "substantially complied with the requirements of Tennessee Rule of Evidence 404(b) and it did not abuse its discretion by admitting the evidence." Alternatively, the State argues that any error was harmless.

The threshold issue regarding the admissibility of a piece of evidence is relevance. Relevant evidence is evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. "Evidence which is not relevant is not admissible." Tenn. R. Evid. 402. Even if evidence is deemed relevant, it may still be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Tenn. R. Evid. 403. Additionally, "[e]vidence of a person's character or trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion." Tenn. R. Evid. 404(a). However, "[e]vidence of other crimes, wrongs, or acts" may be admissible for "other purposes," such as proving identity, criminal intent, or rebuttal of accident or mistake. Tenn. R. Evid. 404(b); *State v. Thacker*, 164 S.W.3d 208, 239-40 (Tenn. 2005). Under Rule 404(b), the evidence must be excluded "if its probative value is outweighed by the danger of unfair prejudice." Tenn. R. Evid. 404(b)(4).

We must first determine whether the admissibility of the evidence should have been analyzed under Rule 403 or 404(b). "Rule 403 is a rule of admissibility, and it places a heavy burden on the party seeking to exclude the evidence." *State v. James*, 81 S.W.3d 751, 757 (Tenn. 2002). On the other hand, most authorities suggest that trial courts take a "restrictive approach of 404(b) . . . because 'other act' evidence carries a significant potential for unfairly influencing a jury." Neil P. Cohen et al., *Tennessee Law of Evidence* § 4.04[8][e] (4th ed. 2000). Traditionally, courts of this state have viewed any testimony of prior bad acts by a defendant as inadmissible when used as substantive evidence of guilt of the crime on trial. *State v. Parton*, 694 S.W.2d 299, 302-03 (Tenn. 1985). In those instances where the prior conduct or acts are similar to the crimes on trial, the potential for a prejudicial result increases. *State v. Bordis*, 905 S.W.2d 214, 232 (Tenn. Crim. App. 1995).

As set forth above, Rule 404(b) applies only to "bad acts," *State v. Clark*, 452 S.W.3d 258, 289 (Tenn. 2014), and testimony about behavior that is relevant and that does not constitute a crime or bad act is not analyzed under the Rule. *State v. Reid*, 213 S.W.3d 792, 814 (Tenn. 2006) (determining that possession of a gun, standing alone, does not constitute a crime and therefore evidence of ownership of a gun is not a bad act). However, behavior that, while not criminal, constitutes a "moral 'wrong'" must also meet the

strictures of Rule 404(b). *Clark*, 452 S.W.3d at 289 (categorizing possession of pornography as potentially being perceived as a "moral wrong" by some members of society). This Court has previously held in child rape cases that an adult giving a minor a romantic kiss and inviting the minor to spend the night in a note as well as testimony from the victims' mother regarding the defendant's controlling behavior are "bad acts" which require the application of the Rule. *See State v. Holt*, No. E2010-02128-CCA-R3-CD, 2012 WL 826523, at *11 (Tenn. Crim. App. Mar. 13, 2012), *no perm. app. filed*; *State v. Smartt*, No. M2014-01093-CCA-R3-CD, 2015 WL 3563024, at *7 (Tenn. Crim. App. Apr. 22, 2015), *no perm. app. filed*. Thus, regardless of whether the actions of Defendant in this case constitute a crime or simply a "bad act," we agree that these actions have the potential to reflect upon Defendant's character and are properly analyzed under Rule 404(b).

Questions concerning the admission or exclusion of evidence rest within the sound discretion of the trial court, and this Court will not interfere with the exercise of this discretion in the absence of a clear abuse appearing on the face of the record. *See State v. DuBose*, 953 S.W.2d 649, 652 (Tenn. 1997); *State v. Van Tran*, 864 S.W.2d 465, 477 (Tenn. 1993); *State v. Harris*, 839 S.W.2d 54, 73 (Tenn. 1992). An abuse of discretion occurs when the trial court applies an incorrect legal standard or reaches a conclusion that is "illogical or unreasonable and causes an injustice to the party complaining." *State v. Ruiz*, 204 S.W.3d 772, 778 (Tenn. 2006) (citing *Howell v. State*, 185 S.W.3d 319, 337 (Tenn. 2006)). The abuse of discretion standard "does not permit an appellate court to substitute its judgment for that of the trial court." *State v. McCaleb*, 582 S.W.3d 179, 186 (Tenn. 2019).

Next, we must determine whether the trial court substantially complied with Rule 404(b)'s procedural requirements prior to admitting the evidence to determine the appropriate standard of review. *DuBose*, 953 S.W.2d at 652 (applying abuse of discretion standard when trial court substantially complies with the procedural requirements of Rule 404(b)).

As required by Tennessee Rule of Evidence 404(b)(1), the trial court properly considered the admissibility of the victim's testimony about the incident in a jury-out hearing. At the hearing, the victim testified about the incident that occurred when he was three or four, shortly before he was placed into foster care for the first time. The victim testified that Defendant called him into Defendant's bedroom and told him to pull down his pants. The victim testified Defendant attempted to touch the victim's penis with his hands. The victim did not pull down his pants and quickly ran out of the bedroom. The victim disclosed this incident in one of the five forensic interviews.

The State argued that the evidence went to intent and was relevant to show a lack of mistake or accident. Additionally, the State argued that the evidence of Defendant's

- 8 -

actions was relevant to establish consistency in the victim's story. Defendant argued that the evidence was highly inflammatory and prejudicial because of the age of the victim at the time of the incident and the similarity to the incidents for which Defendant was on trial.

During the hearing, the trial court determined that the incident was "relevant" to "go to [Defendant's] intent" because the probative value was high to establish when the abuse started and "goes to illustrate [Defendant's] intent to achieve sexual arousal or gratification." The trial court noted that the victim's credibility was tested by questioning about the incident and that the trial court was satisfied that the victim could relate the incident to both the location and events that took place around that same time. The trial court ultimately ruled that the probative value outweighed the prejudicial effect and permitted the State to ask the victim about the uncharged incident. In a court memorandum contained in the technical record, the trial court "denied [the motion] as to the motive/intent and lack of [mis]takes and granted [the motion] as to 'sexual arousal and gratification' under the condition the State can prove to the [c]ourt by clear and convincing evidence."

In our assessment, the trial court substantially complied with the procedural requirements of 404(b), so our review is limited to whether the admission of the evidence qualified as an abuse of discretion. The abuse of discretion standard of review is a "less rigorous review" of a trial court's decision and does not permit this Court to substitute its judgment for that of the trial court. *McCaleb*, 582 S.W.3d at 186 (quoting *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010)). On review, courts should determine "(1) whether the factual basis for the [trial court's] decision is properly supported by evidence in the record, (2) whether the [trial] court properly identified and applied the most appropriate legal principles applicable to the decision, and (3) whether the [trial] court's decision was within the range of acceptable alternative dispositions." *Id.* (quoting *Lee Med., Inc.*, 312 S.W.3d at 524) (citations omitted). Defendant argues that the trial court failed to identify the material issue permitting the admission of the evidence and that the trial court erred in finding the evidence was relevant because sexual arousal and/or gratification are not elements of rape of a child or aggravated sexual battery, but the elements of aggravated sexual battery include "sexual contact," which by definition includes "intentional touching [that] can be reasonably construed as being for the purpose of sexual arousal or gratification." *See* T.C.A. §§ 39-13-504(a); 39-13-501(6). Defendant also argues there was no proof of arousal during the incident. Defendant acknowledges that the trial court "rejected" his arguments, finding that the victim's testimony was relevant to the issue of intent to achieve sexual arousal or gratification. Moreover, this Court has previously determined that evidence of prior sexual misconduct was relevant to show a defendant's intent, specifically for the charge of aggravated sexual battery. *See e.g., McCullough v. State*, No. M2004-02430-CCA-R3-PC, 2006 WL 1896362, at *6 (Tenn. Crim. App. July 7, 2006) (concluding counsel was not ineffective for failing to object to evidence admitted after 404(b) hearing that the defendant previously masturbated

in front of the victim because evidence was admissible to show "intent to achieve sexual arousal or gratification"), *perm. app. denied* (Tenn. Oct. 30, 2006); *State v. Knoblock*, No. E2004-01961-CCA-R3-CD, 2005 WL 1968444, at *5 (Tenn. Crim. App. Aug. 16, 2005) (concluding that prior conviction for aggravated sexual battery was admissible to prove defendant's intent and motive in subsequent case), *no perm. app. filed*. Here, the trial court properly ruled that the evidence had strong probative value. We acknowledge there is obviously a risk of unfair prejudice, particularly when allegations of sexual misconduct are involved, but the trial court provided the jury with a limiting instruction in the jury charge. We conclude the trial court substantially complied with Tennessee Rule of Evidence 404(b) and did not abuse its discretion in admitting the victim's testimony. Defendant is not entitled to relief on this issue.

## Double Jeopardy

Defendant also challenges the conviction for rape of a child. Specifically, Defendant argues that the State "violated [Defendant's] constitutional protection against double jeopardy by retrying him for rape of a child, an offense he was acquitted of by the first jury." Defendant argues that his conviction should be overturned, and the case should be remanded for a new trial. In a related argument, Defendant argues that the trial court abused its discretion by modifying the conviction to attempted rape of a child and that the double jeopardy violation made it easier for the jury to find him guilty of the two counts of aggravated sexual battery. The State, on the other hand, argues that "[a]lthough the second trial violated double jeopardy, a new trial is unwarranted" because the trial court did not abuse its discretion when it entered a judgment for the lesser-included offense of attempted rape of a child and Defendant "has not shown a reasonable probability that the jury would not have convicted him of attempted rape of a child absent the presence of the charge of rape of a child." The State disagrees that Defendant's convictions for aggravated sexual battery were somehow affected by the double jeopardy violation.

We begin our analysis with a discussion of the law of double jeopardy. The language of both the federal and state constitutions guarantees that no person shall be twice put in jeopardy of life or limb for the same offense. U.S. Const. amend. V; Tenn. Const. art. I, § 10. The Double Jeopardy Clause provides three separate protections: (1) protection against a second prosecution for the same offense after acquittal; (2) protection against a second prosecution for the same offense after conviction; and (3) protection against multiple punishments for the same offense. *State v. Watkins*, 362 S.W.3d 530, 541 (Tenn. 2012) (citing *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969), *abrogated on other grounds by Alabama v. Smith*, 490 U.S. 794 (1989)). Whether multiple convictions violate the protection against double jeopardy is a mixed question of law and fact, which this Court will review de novo without any presumption of correctness. *State v. Smith*, 436 S.W.3d 751, 766 (Tenn. 2014) (citing *State v. Thompson*, 285 S.W.3d 840, 846 (Tenn. 2009)).

In *Richardson v. United States*, 468 U.S. 317, 325 (1984), the Supreme Court observed that a mistrial based upon a deadlocked jury does not end jeopardy. Said a different way, "dismissal of a jury that cannot agree upon a verdict does not operate as an acquittal of the defendant, and his subsequent retrial does not, therefore, constitute double jeopardy." *State v. Seagroves*, 691 S.W.2d 537, 540 (Tenn. 1985) (citing *Richardson*, 468 U.S. at 325); *State v. Witt*, 572 S.W.2d 913 (Tenn. 1978); *State v. Malouf*, 199 Tenn. 496 (1956)) (holding double jeopardy does not bar retrial of a defendant after a mistrial was declared at an earlier trial because the jury could not reach a verdict on defendant's guilt of lesser offenses included in the crime for which he was indicted). In other words, the mere fact that Defendant herein had one trial did not preclude a second trial.

However, in this troubling case, both the State and Defendant agree that the second trial after Defendant was acquitted of rape of a child violated double jeopardy. The question presented in this appeal is the appropriate remedy for that violation. This case is complicated because Defendant was tried on multiple charges, one of which was jeopardy-barred, was ultimately convicted of one jeopardy-barred charge and two unbarred charges, and now seeks to use the double-jeopardy violation concerning the barred charge as a means of challenging the convictions for all his offenses. The question we must resolve is whether the trial court's action of modifying the conviction for the jeopardy-barred rape of a child conviction to a conviction for attempted rape of a child was an appropriate remedy for the double jeopardy violation.

The State relies heavily on *Morris v. Mathews*, 475 U.S. 237, 245 (1986), to support its argument that the trial court's modification of the conviction for rape of a child to attempted rape of a child cures the double jeopardy problem. The Supreme Court in *Mathews* held that reducing a defendant's concededly jeopardy-barred conviction for aggravated murder to a conviction for murder that was not jeopardy-barred was an adequate remedy for the double jeopardy violation. *Id.*

In *Mathews*, the defendant pled guilty to the charge of aggravated robbery. *Id.* at 239. Subsequently, he was charged with aggravated murder based on the robbery to which he pled guilty. *Id.* Prior to trial, the defendant sought to dismiss the indictment based on double jeopardy. *Id.* at 240. The jury was instructed on the lesser-included offense of murder, but he was convicted of the greater offense, aggravated murder. *Id.* at 241-42. On direct appeal, the intermediate appellate court determined that the conviction for aggravated murder was barred by double jeopardy and modified the conviction to the lesser-included offense of murder. *Id.* at 242. The defendant sought habeas relief, ultimately appealing to the United States Supreme Court. In its analysis, the Court first noted that the combination of the two convictions was a violation of the double jeopardy clause. *Id.* at 244. The Court went on to rule that because the jury had found the defendant

- 11 -

guilty of aggravated murder, they had also found him guilty, "a fortiori, of the lesser (included) offense of murder as well." *Id.* Because this lesser charge would not be jeopardy-barred, because it covered conduct not within the charge of aggravated robbery, the Court ruled that modifying the felony-murder conviction to the lesser-included offense of murder would cure the jeopardy violation so long as the defendant could not "demonstrate a reasonable probability that he would not have been convicted of the non-jeopardy-barred offense absent the presence of the jeopardy-barred offense." *Id.* at 246. "[A] 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Id.* at 247 (citing *Strickland v. Washington*, 466 U.S. 668, 695 (1984)). "The 'reasonable probability' standard is not the same as the 'more likely than not' or 'preponderance of the evidence' standard; it is a qualitatively lesser standard." *Chinn v. Shoop*, 598 U.S. ___, 143 S. Ct. 28 (2022) (Jackson, J., and Sotomayor, J., dissenting from denial of certiorari) (citing *Kyles v. Whitley*, 514 U.S. 419, 434 (1995) (collecting cases); *U.S. v. Dominguez Benitez*, 542 U.S. 74, 83 n.9 (1985); *Strickler v. Greene*, 527 U.S. 263, 298 (1999) (Souter, J., concurring in part and dissenting in part)).

The Supreme Court distinguished *Mathews* from *Price v. Georgia*, 398 U.S. 323 (1970), the case Defendant primarily relies on here on appeal to support his argument. In *Price*, the defendant was tried for murder, and the jury found him guilty of the lesser-included offense of voluntary manslaughter. 398 U.S. at 324. The intermediate appellate court reversed the defendant's conviction based on an erroneous jury instruction and remanded for a new trial. *Id.* The defendant was tried a second time for murder on the original indictment, and the trial court refused to dismiss the charge on double jeopardy grounds. *Id.* On retrial, the trial court instructed the jury on the lesser-included offense of voluntary manslaughter, and the second jury convicted the defendant of voluntary manslaughter. *Id.* The United States Supreme Court ultimately held that the conviction violated double jeopardy and that a third trial was necessary because the Court was unable to "determine whether or not the murder charge against [Price] induced the jury to find him guilty of the less serious offense of voluntary manslaughter rather than to continue to debate his innocence." *Id.* at 331.

The Court in *Mathews* made clear that the decision in *Price* did not mean that "a conviction for an unbarred offense is inherently tainted if tried with a jeopardy-barred charge." *Mathews*, 475 U.S. at 246; *see also Jones v. Thomas*, 491 U.S. 376, 387 (1989) ("neither the Double Jeopardy Clause nor any other constitutional provision exists to provide unjustified windfalls"). Instead, *Price* suggested a new trial "is required only when the defendant shows a reliable inference of prejudice." *Id.* In *Price*, a finding of prejudice was based on the "likelihood that the conviction for manslaughter had been influenced by the trial on the murder charge – that the charge of the greater offense for which the jury was unwilling to convict also made the jury less willing to consider the defendant's

innocence on the lesser charge." *Id.* at 254. The Court concluded that the "basis for finding or presuming prejudice" in *Price* was "not present" in *Mathews*. *Id.* at 245.

We see nothing in the *Mathews* or *Price* opinions that would suggest the trial court's remedy would not be adequate in Defendant's case. We believe the state court judge was authorized to correct the double jeopardy problem by reducing the jeopardy-barred rape of a child conviction to a non-jeopardy-barred lesser-included offense, here attempted rape of a child. Attempted rape of a child is a lesser-included offense of rape of a child. The trial court provided the jury with an instruction on attempted rape of a child. The jury's verdict on the jeopardy-barred rape of a child charge meant that the jury "necessarily found that the defendant's conduct satisfies the elements of" attempted rape of a child. *Mathews*, 475 U.S. at 247. The jury did not convict Defendant of a lesser-included offense of the jeopardy-barred offense, like in *Price*, so Defendant's concern that the jeopardy-barred offense somehow impacted the jury's verdict is not present. *See State v. Martin*, No. 1 CA-CR 20-0585, 2021 WL 6143052, at *2 (Az. Ct. App. Dec. 30, 2021) ("The [*Price*] presumption of prejudice does not arise in cases such as here, where the jury is provided the opportunity to acquit on the charged (albeit jeopardy-barred) offense and convict on a lesser-included offense, but nonetheless convicts the defendant of the greater offense.").

After the jeopardy-barred conviction was modified, Defendant had the burden to show that without the improper inclusion of the jeopardy-barred offense, there is a reasonable probability he would not have been convicted of the non-barred offense. *Id.* at 246-47. Defendant has not met his burden. Defendant argues that the nature of the jeopardy-barred offense caused prejudice, in part because a prospective juror stated that she would be unable to serve on the jury because of the nature of the crime. This juror was excused for cause and the remaining jurors indicated they could and would decide the case based on the evidence presented. There is no prejudice. This argument has no merit.

Defendant further asserts that being tried for the jeopardy-barred offense made it easier for the jury to convict him of aggravated sexual battery. We disagree. Although the victim's testimony recounted one episode during which all of the abuse occurred, the State elected on which evidence to rely to support the charges of aggravated sexual battery. The jury is presumed to follow the instructions of the trial court in its consideration of the burden of proof. *State v. Reid*, 91 S.W.3d 247, 279 (Tenn. 2002); *see also Benton v. Maryland*, 395 U.S. 784, 797-98 (1969) (finding argument that evidence of jeopardy-barred offense prejudiced jury unavailing because it was "not obvious from the face of the record that the burglary conviction was affected by the double jeopardy violation."). Moreover, Defendant fails to cite any authority for his argument that he could have limited the State's proof to only that of an attempted rape. To the contrary, the Tennessee Supreme Court has held that proof that a defendant "completed a crime, in and of itself, does not shield a defendant from a conviction for criminal attempt of the crime allegedly

- 13 -

committed." *State v. Thorpe*, 463 S.W.3d 851, 863 (Tenn. 2015). To that end, the "State need not adduce proof in a prosecution for criminal attempt that the defendant failed to complete the target crime." *Id.* Defendant has failed to establish a reasonable probability that he would not have been convicted of attempted rape of a child absent the presence of the jeopardy-barred rape of a child offense. *Morris,* 475 U.S. at 246. Defendant is not entitled to relief.

To the extent that Defendant argues the trial court was without authority to modify the conviction to the lesser-included offense, we disagree. Here, the trial court entered a judgment that differed from the verdict, essentially amending an erroneous judgment. The trial judge was not acting as thirteenth juror but modifying a conviction to correct the double jeopardy problem. *See, e.g. State v. Hill*, 856 S.W.2d 155, 157 (Tenn. Crim. App. 1996) (finding trial judge's rejection of the jury's assessment of the value of the amount of property stolen and subsequent entry of a judgment that differed from the verdict was not an action as a thirteenth juror). Defendant is not entitled to relief on this issue.

*Conclusion*

For the foregoing reasons, the judgments of the trial court are affirmed.

s/Timothy L. Easter
TIMOTHY L. EASTER, JUDGE

- 14 -